THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROY W. PLUSKIS, Defendant-Appellant.

Fourth District   No. 4—86—0873

Opinion filed November 5, 1987.

450

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Kenneth R. Baumgarten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On November 19, 1986, following a jury trial in the circuit court of Vermilion County, defendant, Roy W. Pluskis, was convicted of two counts of aggravated criminal sexual assault against two of his daughters. He was subsequently sentenced to consecutive terms of 20 and 30 years' imprisonment with credit for 334 days previously served. On appeal, defendant maintains (1) the trial court erred in allowing two physicians, under the physician-patient exception to the hearsay rule, to repeat statements made by the complainants identifying their assailant; (2) the 30-year sentence was unduly disparate to the 20-year

sentence where there was no evidence to differentiate the nature and circumstances of the offenses; and (3) the trial court erred in denying defendant sentence credit on both sentences for time spent in jail prior to conviction. We affirm.

At trial, defendant's daughters, who were then six and eight years of age, each testified (1) defendant had placed his finger and his penis into her vagina on more than one occasion, while they lived in "the green house"; and (2) she had reported defendant's conduct to Carol Server, a probation officer assigned to monitor the custody of the children. The older girl indicated that a seven-year-old female cousin had also placed her fingers in both girls' vaginas on more than one occasion. The children's foster parents testified (1) custody of the children was transferred to them in 1981; (2) custody was transferred to defendant and Adrienne Pluskis, the children's natural parents, in June 1985; (3) the children were living with defendant and Adrienne in a green-colored house in Danville in July 1985; and (4) the foster parents regained custody of the children in October 1985.

Carol Server indicated at trial that she saw the children in July 1985, while they were living in "the green house" and did not see them again until October of that year when she transported them from Kentucky to Champaign. In response to the State's questioning, she indicated that the children did not tell her about anything that happened between them and defendant.

Dr. Kathleen Buetow testified at trial that she had examined the two girls on October 7, 1985, for "school physicals." She said that both girls had vaginitis, chronically infected vaginal tracts, "markedly" abnormal discharge and torn hymenal rings. She said that they each had a "significantly" wider than normal introitus, or opening to the vagina. She testified that following her examination, she concluded that both girls had been sexually abused and that "someone" had placed an object, wider than a finger, into their vaginas sometime between two weeks and six months prior to the examination. Dr. Buetow further testified that prior to conducting the physical examination, she had obtained an oral history from the children. Over defense objection, she testified that the children indicated to her that they had been touched in the vaginal area by defendant.

Dr. Ronald Howard testified that he examined the children in Kentucky on September 20, 1985, at the request of a social worker. He said that both girls had vaginitis and in both cases the hymenal ring was torn and broken. He concluded that the children were suffering from vaginal trauma that could be related to sexual abuse. Howard was further allowed to testify, over defendant's hearsay ob-

jection, that he had taken an oral history from the younger child, and she told him that her father "put his finger in her bottom," and that of her older sister and her younger sister. She later told him she did not mean her rectum. The older sister confirmed what the younger one had said.

Adrienne Pluskis, the children's natural mother, testified that, although she had never observed defendant touch the girls in the vaginal area with either his penis or his fingers, she noticed defendant in bed with the older child "rocking [from] side to side" in the manner he preferred to have sexual intercourse with Adrienne. She further stated that the children sometimes made complaints that defendant played "too rough," and she had seen him on several occasions with his hands underneath their nightgowns. Mrs. Pluskis testified that she had been convicted of a felony and had been granted immunity from prosecution on the charges relating to the sexual abuse of her children. She also said that she had an agreement with the foster parents that she could visit the children as long as defendant remained in jail.

Defendant testified in his own behalf and denied involvement in the offenses charged. He said he often played with the girls and tickled them, but he never touched them in the vaginal area. Defendant admitted he had previously been convicted of a felony; however, the jury was not informed that the conviction related to the abduction of his children.

Defendant maintains on appeal that the statements made by the children to the physicians identifying defendant as their assailant was inadmissible hearsay. The trial court allowed the testimony on the basis that the statements pertained directly to the children's medical condition and treatment and were admissible under *People v. Gant* (1974), 58 Ill. 2d 178, 186, 317 N.E.2d 564, 569.

■ The court in *Gant* allowed statements of a presently existing bodily condition made by a patient to a doctor, because of the likelihood that such statements were made in order to receive the most effective treatment. The statements were deemed reliable, because the effectiveness of the treatment depended on the accuracy of the information provided. (*People v. Gant* (1974), 58 Ill. 2d 178, 186, 317 N.E.2d 564, 569.) That court also indicated that the exception to the hearsay rule permitted a physician to testify to statements made by the patient, including statements concerning the manner in which the injury was received. There, however, the statement by the victim to the physician did not include the naming of the assailant.

■ In *People v. Taylor* (1987), 153 Ill. App. 3d 710, 506 N.E.2d 321, *appeal denied* (1987), 116 Ill. 2d 573, this court indicated that

*Gant* is not precedent for admitting evidence of statements made by a victim to a treating physician naming the assailant. The State contends that here, unlike in *Taylor*, the naming of the assailant was permissible because evidence that a cousin of the older girl had placed her finger in the older girl's vagina made the name of the victim relevant to treatment. In *Taylor*, we agreed with the rationale for the foregoing hearsay exception as stated in *Gant*. However, we do not interpret the evidence to indicate here that the treatment to be given this victim bore upon the question of who the assailant was. Rather, it bore on the nature of the injury received by the victim. The court erred in allowing the two physicians to repeat the portions of the statements of the victims which named the defendant as their assailant. This error, however, was harmless in light of the strength of the other evidence against the defendant. (*People v. Gant* (1974), 58 Ill. 2d 178, 317 N.E.2d 564.) In *Taylor*, the error of naming the assailant was compounded by improprieties by the State in closing argument and the lack of clear and convincing testimony by the victims.

■ Here, the testimony of each victim corroborates the other. Both victims testified that defendant had touched them with his penis and his fingers when they lived in "the green house." These victims, unlike those in *Taylor*, however, were able to present their testimony without the assistance of leading questions, and each volunteered much of the testimony concerning the incidents of abuse. Although they were, at times, unable to remember all of the details of the incidents, they were each able to testify to their feelings at the times. The older girl was also able to corroborate the younger girl's testimony, because she had actually seen defendant touch the girl. In addition, the girls' testimony was corroborated by that of Adrienne Pluskis. She stated that she saw defendant in bed with the older child, and although she said she was not aware that defendant was sexually assaulting the girls, the jury could have reasonably inferred from the testimony that he had. Although Adrienne's testimony was impeached by the evidence of prosecutorial immunity and the visitation agreement with the foster parents, her testimony furnished some corroboration which was lacking in *People v. Taylor* (1987), 153 Ill. App. 3d 710, 506 N.E.2d 321.

The physicians gave considerable proper testimony relating to the physical findings of abuse. Unlike in *Taylor* this testimony strongly indicated that these children had been subjected to some form of sexual abuse, thus corroborating the children's testimony. The defendant's theory of defense was that the children had been abused on several occasions by their seven-year-old cousin, but both physicians testified

that the damage to the girls' genitals was unlikely to have resulted from penetration by the fingers of a seven-year-old child.

Finally, the only testimony impeaching the children's statements, other than defendant's denial, was their testimony that they had told the probation officer, Carol Server, of the incidents. Her statements that they had not told her was not substantial impeachment. In light of all of this evidence against defendant, the error in naming him as the assailant was harmless.

■ Defendant's next argument is that the 30-year sentence for one conviction of aggravated assault was unduly disparate to the 20-year sentence imposed for the other conviction. Defendant maintains that there was no evidence presented to differentiate the nature and circumstances of the offenses, nor was there evidence indicating that one assault was more severe than the other.

Although "[a]n arbitrary and unreasonable disparity *between* the sentences of codefendants who are similarly situated *** cannot be defended" (emphasis added) (*People v. Godinez* (1982), 91 Ill. 2d 47, 55, 434 N.E.2d 1121, 1126), such a rule has not been applied in regard to multiple sentences imposed upon the same defendant. Fundamental fairness does not require that two sentences for separate convictions of similar offenses be of similar severity. The trial court's decision regarding sentencing is entitled to great deference and weight. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

■ Finally, defendant contends that the trial court erred when it gave him credit against his sentence for time spent in jail only as to one sentence and not as to both. Section 5—8—7(b) of the Unified Code of Corrections states that a convicted defendant shall be given credit on "the *** sentence *** for time spent in custody as a result of the offense for which the sentence was imposed." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—7(b).) In *People v. Cooper* (1986), 146 Ill. App. 3d 596, 497 N.E.2d 157, upon revocation of a defendant's probation, a circuit court sentenced the defendant to concurrent terms of imprisonment. The defendant had first been placed in custody for one of the charges and later was held under both charges. On appeal, the Third District held that the defendant was entitled to credit as to both sentences for the time he was being held on both charges, but that he was entitled to credit for the time he was held on one charge only as to the time he was in custody in regard to that charge.

Where, as in *Cooper*, a defendant receives concurrent sentences of imprisonment, that defendant does not receive double credit for a single span of incarceration before sentence, because the time of the

longer sentence is determinative as to the time the defendant is held. Here, on the other hand, defendant received consecutive sentences. Because one sentence does not begin to run until the other has been completed, to give him credit as to both sentences would serve to reduce his sentence by twice the time of the defendant's prior incarceration. Although no case directly in point has been called to our attention, we do not deem such double credit to have been intended. See *People v. Krankel* (1985), 131 Ill. App. 3d 887, 899, 476 N.E.2d 777, 787.

For the reasons stated, the decision of the trial court is affirmed.

Affirmed.

SPITZ, P.J., and McCULLOUGH, J., concur.