THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FRANK C. MATA, Defendant-Appellant.

First District (5th Division)   No. 1—90—0307

Opinion filed February 26, 1993.—Rehearing denied March 26, 1993.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Carol L. Gaines, and Pamela A. Paziotopoulos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

Following a bench trial, defendant, Frank C. Mata (Mata), was found guilty of residential burglary. The trial court sentenced the defendant to a four-year term in the Illinois Department of Corrections which was to run consecutively with four- and seven-year concurrent sentences earlier imposed in an unrelated case.

The issues presented on appeal are: (1) whether it was error for the trial court to have found the defendant guilty of residential burglary beyond a reasonable doubt because the attached garage was not a "dwelling place"; (2) whether the defendant was not accountable because he was merely present at the crime scene and was also in an extremely intoxicated condition; (3) whether evidentiary weaknesses warrant a reduction of the degree of the residential burglary offense pursuant to Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)); (4) whether the defendant was denied a fair bench trial in violation of his

*Miranda* rights when, for the limited purpose of impeachment, the trial court allowed cross-examination of the defendant about his refusal to make a written statement to the police; (5) whether the case must be remanded for resentencing because of deficiencies in the presentence report; (6) whether the trial court erred in denying the defendant credit for time served awaiting trial because he received credit for the same time against a sentence in another case; and (7) whether the defendant's consecutive sentence should be modified to run concurrently.

We reverse.

BACKGROUND

On December 9, 1988, complainant Loretta Berghoff testified that she returned home, parked her car in her garage, which is attached to her home, and went into her house. She did not close the main garage door. When she walked back out to the garage, the complainant testified that she saw two uninvited men in her garage. One of the gentlemen, codefendant Ben Oelrich, had his hands on her snowblower, which had been moved from the corner where it had been stored. The other man, defendant Mata, was "[r]ight beside him or directly behind him." On cross-examination, the complainant testified that the defendant was on the blacktop but that she felt that he was inside the garage.

The complainant further testified that she also noticed an unfamiliar truck which had been backed up to her garage. The top of the truck was raised and the tailgate was down. The complainant asked the men what they were doing. The codefendant replied that they needed directions. The complainant asked the defendants to leave her property. According to the complainant, as the codefendant started talking to the complainant, the defendant began to turn around and go back to the passenger side of the truck. The two men got into the truck and left.

The complainant called the police and gave a description of the truck and the two men. Shortly thereafter, an officer stopped the truck and passengers which matched the description. Another officer escorted the complainant to the area where the truck was stopped and the complainant identified the defendant and the codefendant.

The defendant and codefendant were charged with one count of residential burglary. The codefendant failed to appear prior to trial and a bond forfeiture warrant was entered against him. On January 11, 1990, the case proceeded to trial without the codefendant following a jury waiver by Mata. After hearing evidence and arguments

from counsel, the trial court found the defendant guilty of residential burglary. The defendant filed a motion for a new trial which was denied. The defendant was sentenced to a four-year term in the Illinois Department of Corrections which was to run consecutively with four- and seven-year concurrent sentences earlier imposed on an unrelated case.

OPINION

I

Defendant contends that the trial court erred in finding him guilty of residential burglary where the building was not a "dwelling place." We agree.

Section 19—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 19—3(a)) provides:

"A person commits residential burglary who knowingly and without authority enters the *dwelling place* of another with the intent to commit therein a felony or theft." (Emphasis added.)

Section 2—6(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 2—6(b)) provides:

"For the purposes of Section 19—3 of this Code, 'dwelling' means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside."

A "dwelling" is a structure that one uses as a residence or living quarters in which owners or occupants actually reside. *People v. Bales* (1985), 108 Ill. 2d 182, 191, 483 N.E.2d 517, 521.

A garage, whether attached to various living units or not, cannot be deemed a residence or living quarters. *People v. Thomas* (1990), 137 Ill. 2d 500, 519, 561 N.E.2d 57, 64.

At the time of defendant's trial, an Illinois Appellate Court case held that a burglary of an attached garage constitutes residential burglary. *People v. Dawson* (1983), 116 Ill. App. 3d 672, 675, 452 N.E.2d 385, 387.

However, as discussed in *Thomas*, *Dawson* was decided before *Bales* and also before the legislature adopted a new definition of a "dwelling." (*Thomas*, 137 Ill. 2d at 520, 561 N.E.2d at 64.) Therefore, *Thomas* is now controlling.

The State contends that the defendant has waived this issue because defense counsel failed to object at trial or in his post-trial motion regarding this issue. This contention by the State is without

merit. Plain error and sufficiency of the evidence to convict are two of the three exceptions reviewable to the waiver rule in criminal cases. *People. v. Lighthall* (1988), 175 Ill. App. 3d 700, 705, 530 N.E.2d 81, 84; *People v. Enoch* (1988), 122 Ill. 2d 176, 190, 522 N.E.2d 1124, 1132.

■ The State failed to prove an essential element of residential burglary. The defendant's conviction must be reversed.

For completeness, notwithstanding our disposition of this issue, we will consider other issues raised in this appeal.

## II

Defendant contends that his mere presence near the crime scene coupled with unrebutted evidence that he was intoxicated precluded the State from proving beyond a reasonable doubt that he was accountable for residential burglary. We disagree.

The reviewing court must consider that the circuit court and jury heard and saw the witnesses and that they were in the best position to judge the witnesses' credibility, to determine the weight to be accorded the witnesses' testimony, to decide the inferences to be drawn from the evidence, and to resolve all conflicts in the evidence. *People v. Young* (1989), 128 Ill. 2d 1, 48-51, 538 N.E.2d 461, 473-74.

Thus, the critical inquiry on review of the sufficiency of evidence to support a criminal conviction is

"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

A reviewing court is not to substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses and it is not to reverse a criminal conviction

*"unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt."* (Emphasis in original.) *Young*, 128 Ill. 2d at 51, 538 N.E.2d at 474.

Under Illinois law, a person is legally accountable for the conduct of another when:

"[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c).

The intent to promote or facilitate a crime can be shown by evidence that the defendant shared the criminal intent of the principal or by evidence that there was a common design or community of unlawful purpose. (*People v. Foster* (1990), 198 Ill. App. 3d 986, 993, 556 N.E.2d 1214, 1219.) Absent other circumstances indicating a common design, presence at the scene and flight therefrom do not constitute *prima facie* evidence of accountability. However, they do constitute circumstantial evidence which may tend to prove and establish a defendant's guilt. (*Foster*, 198 Ill. App. 3d at 993, 556 N.E.2d at 1219.) Proof of community of purpose or common design may be drawn from the circumstances surrounding the commission of the act. (*Foster*, 198 Ill. App. 3d at 993, 556 N.E.2d at 1219.) Further, active participation has never been a requirement for the imposition of criminal guilt upon the theory of accountability. *People v. Reid* (1990), 136 Ill. 2d 27, 61, 554 N.E.2d 174, 190.

A trier of fact's conclusion that a defendant is legally accountable for a criminal act will not be set aside on review unless the evidence is so improbable, unsatisfactory, or unreasonable that a reasonable doubt of the defendant's guilt exists. *Foster*, 198 Ill. App. 3d at 993, 556 N.E.2d at 1219.

■ Here, the victim testified that she parked her car and went inside her home, leaving her garage door open. When she went back out into the garage, she noticed two gentlemen inside her garage. The defendant was one of these men. The other man, the codefendant, had his hands on the complainant's snowblower. The defendant's truck was backed up to the complainant's garage with the tailgate open.

The defendant testified that he had been drinking heavily and was intoxicated, and when the codefendant asked to use the defendant's truck, he obliged, insisting that the codefendant drive because the defendant was too inebriated. The defendant further testified that he fell asleep while the codefendant was driving. He awoke because he felt a draft and got out of the truck at the complainant's residence to see what the codefendant was doing. The defendant testified that he never entered the garage.

The trial court stated:

"In order to believe the defendant, we would have to believe that he was drinking all day and he knew where he was going and how much he was drinking. By coincidence and very conveniently he happens to fall asleep on the way to the house and happens to wake up when the truck was in the driveway with the tailgate open and happens to be standing right at the back

of the tailgate; while at the same moment the other defendant was moving the snowblower. It must have been 5 feet away, from my judgment of the pictures and the testimony. It seems like it had to be less than 10 feet. That's what I would think. This is all at the same moment when the victim stepped into the garage and sees this.

I think its pretty clear what happened. They were driving by and saw this snowblower in that garage and they had the truck in a position where Mata was there waiting to hoist the snowblower into the tailgate."

The trial court also had for consideration the size of the snowblower and the probability or improbability that one man would be able to put the snowblower into the truck.

In accordance with *Young*, we may not set aside the trial court's conclusion that the defendant is legally accountable.

### III

Defendant next contends that evidentiary weaknesses warrant the reduction of the degree of the offense pursuant to Supreme Court Rule 615(b)(3). We disagree.

Illinois Supreme Court Rule 615(b)(3) provides:

"(b) Powers of the Reviewing court. On appeal the reviewing court may:

\* \* \*

(3) reduce the degree of the offense of which appellant was convicted." 134 Ill. 2d 615(b)(3).

Residential burglary is a Class 1 felony, carrying a minimum sentence of four years' imprisonment. (Ill. Rev. Stat. 1987, ch. 38, pars. 19—3(b), 1005—8—1(a)(4).) Probation is not an available disposition. Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(2)(G).

The court imposed the minimum sentence of four years in prison on Mata. The charged offense occurred while Mata was on pretrial release for an unrelated narcotics charge. Therefore, the trial court was required by statute to order the four-year sentence to run consecutively with the seven-year sentence imposed on the narcotics conviction. Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(h).

In the case at bar, when Mata asked if the sentences could run concurrently, the court responded: "I'm afraid not." The court explained that it had no discretion and was ordering the sentences to run consecutively because the legislature had so required. The court also indicated that it wished that it could give Mata credit for time

served in custody awaiting trial but could not. It made the following remarks:

"I feel it would be [*sic*] appropriate amount of time in terms of the sentences that he is in fact serving \*\*\*."

The defendant contends that under circumstances such as these, it is appropriate for this court to exercise its authority under Supreme Court Rule 615(b)(3) and reduce the defendant's conviction to a lesser included offense which permits a less severe sentence. The defendant cites *People v. Jackson* (1989), 181 Ill. App. 3d 1048, 537 N.E.2d 1054.

In *Jackson,* the defendant was convicted of residential burglary and sentenced to the minimum term of four years in prison. (*Jackson,* 181 Ill. App. 3d at 1049, 537 N.E.2d at 1055.) In imposing the sentence, the court noted that under the law it had no choice but to impose a four-year prison term and that if the law were otherwise, the court would certainly have considered a lesser sentence. On appeal, the defendant noted that in light of the trial court's comments and the fact that the evidence of intent to commit a theft at the time of the entry was weak, a reduction of the degree of the offense pursuant to Supreme Court Rule 615(b)(3) was justified. *Jackson,* 181 Ill. App. 3d at 1050, 537 N.E.2d at 1056.

The appellate court agreed, holding that the court's remarks, combined with the evidentiary weaknesses, warranted invocation of Supreme Court Rule 615(b)(3). Accordingly, the court reduced the defendant's residential burglary conviction to the lesser included offense of criminal trespass to a residence and remanded for resentencing. *Jackson,* 181 Ill. App. 3d at 1052, 537 N.E.2d at 1056.

The defendant also cites *People v. Coleman* (1979), 78 Ill. App. 3d 989, 398 N.E.2d 185. In *Coleman,* the trial court, in imposing the minimum term of six years for armed robbery, stated that it would have imposed no greater than three years had the statute allowed such a disposition. (*Coleman,* 78 Ill. App. 3d at 992, 398 N.E.2d at 186.) Noting that the complainant's testimony that the defendant was armed with a knife was corroborated only with a small puncture hole in the seat of the complainant's truck (in which the crime occurred), the reviewing court reduced the offense to robbery and the sentence to three years.

The power granted in Supreme Court Rule 615(b)(3) is recognition that occasionally situations arise where an appellate court must be vested with the power and authority to reduce charges and sentences in the interest of fair and uniform administration of justice. This

power should be exercised with caution and circumspection. *Jackson*, 181 Ill. App. 3d at 1051, 537 N.E.2d at 1056.

A comparison of the facts and circumstances in the *Jackson* and *Coleman* cases with the facts and circumstances of the case at bar indicates that the case at bar is inapposite to the *Jackson* and *Coleman* cases.

We note that the defendant contends that the evidence adduced against him would justify reducing the degree of his conviction to a Class C misdemeanor of criminal trespass to land. (Ill. Rev. Stat. 1987, ch. 38, par. 21—3(a).) However, the trial court in the case at bar expressed no doubts about the strength of the evidence against the defendant. The trial court expressed concerns about the requirements of the consecutive sentence.

Although the defendant argues that this court should exercise its power to reduce his conviction to a lesser offense, we note that the defendant also contends that burglary is not the lesser included offense of residential burglary.

The burglary statute now provides:

"[Burglary] shall not include *** the offense of residential burglary as defined in Section 19—3 hereof." Ill. Rev. Stat. 1991, ch. 38, par. 19—1.

Since the burglary statute provides that burglary will not include the offense of residential burglary, it can be and is now argued by the defendant that the legislature did not intend for residential burglary to include the lesser offense of burglary.

The defendant contends that had the legislature intended to make burglary a lesser included offense of residential burglary, the legislature would have defined residential burglary as "burglary of the dwelling place of another." The defendant compares section 18—2 (armed robbery), section 20—1.1 (aggravated arson), and section 12—4 (aggravated battery). (Ill. Rev. Stat. 1987, ch. 38, pars. 18—2, 20—1.1, 12—4.) There is an obvious problem with this argument. There is no syllogism. The argument cannot be completely disregarded, however, because the Illinois Supreme Court has expressly declined to rule on this issue. *People v. Chandler* (1989), 129 Ill. 2d 233, 255, 543 N.E.2d 1290, 1299.

Although the legislature could make all arguments regarding this issue moot, the legislature has deemed it unnecessary to do anything further regarding the definition of residential burglary.

■ It is clear that, absent a special definition by the legislature, residential burglary is more inclusive than burglary. It is clear that residential burglary has all of the elements of burglary.

Accordingly, it makes more sense to construe burglary as a lesser included offense of residential burglary. A division of the Illinois Appellate Court has so held. *People v. Johnson* (1987), 129 Ill. App. 3d 399, 472 N.E.2d 854.

We now also hold that residential burglary includes burglary as the lesser offense.

We now consider whether this court should exercise powers of reduction under Illinois Supreme Court Rule 615(b)(3).

■■ Our decision in this case is that the residential burglary conviction must be reversed. Relative to exercising appellate court powers of reduction, we note that the State chose not to charge the defendant with burglary. The State now contends that the defendant can be convicted of burglary. The problems and potential for abuse are obvious. Agreement with the contention of the State can allow the State to charge and argue only a greater offense, and upon failure of proof, obtain conviction in the appellate court of the lesser offense. No reduction is appropriate in this case.

Appellate courts must be circumspect about performing functions which are the primary province of the trial courts. Courts of original and appellate jurisdiction should confine themselves to their respective spheres. (See *People v. Wilk* (1988), 124 Ill. 2d 93, 104, 529 N.E.2d 218, 221-22.) This is not a case where the appellate court must in the interest of fair and uniform administration of justice exercise the powers granted by Supreme Court Rule 615(b)(3).

IV

Defendant contends that he was denied a fair bench trial in violation of his *Miranda* rights when the trial court, for the limited purpose of impeachment, allowed cross-examination of the defendant about his refusal to make a written statement to the police. We disagree.

Assuming *arguendo* that the cross-examination by the prosecutor emphasizing that the defendant did not make a written statement was improper, there was no objection. The following cross-examination was conducted:

"Q. MR. KLAPMAN [Assistant State's Attorney]: Do you remember Officer Perlini asking you to make a written statement and you refused; do you remember that?

A. MR. MATA [Defendant]: Yeah. I remember him asking me that.

· Q. That jogs your memory that you did talk to Officer Perlini?

A. I don't remember, but I remember the officer asking.

Q. Asking you to make a written statement, am I right?

A. Yeah.

Q. You chose not to make one, correct?

A. Yes.

Q. You chose not to make one; isn't that correct?

A. I didn't make one.

Q. You chose not to make one. He said will you give a written statement, and you said what?

A. I don't think I have to make one.

Q. You of your own choice decided not to make a written statement?

A. I said I didn't know how to make one. I didn't know what to do.

THE COURT: This is just for the limited purpose.

MR. KLAPMAN: This is only for the purpose of impeachment, Judge.

The oral statement is already in that he made at the station. He already agreed that he made an oral statement to the officer and that he refused at the station.

THE COURT: I just want the record to be clear that I'm not holding his silence as anything to your putting forth the purpose that he knew what he was doing.

MR. KLAPMAN: It's exactly for the purpose that he knew. Every question is for that purpose."

We find that the defendant has waived this issue.

Generally, both a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial in order to preserve such issue for review. *People v. Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.

An exception to the waiver rule is where the complained-of error constitutes plain error or defects affecting the party's substantial rights. *People v. Young*, 128 Ill. 2d at 39, 538 N.E.2d at 468.

The defendant contends that *Doyle v. Ohio* requires reversal because of plain error. (*Doyle v. Ohio* (1976), 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98-99, 96 S. Ct. 2240, 2245.) We disagree.

In *Doyle*, the United States Supreme Court held that it is a due process violation after the defendant has received his *Miranda* warnings for a prosecutor to comment on the defendant's post-arrest silence for the purpose of impeaching defendant's explanation at trial. *Doyle* recognized that a person has a constitutional right to remain silent and that violation of that right can be plain error.

However, if the defendant makes an exculpatory statement at trial which is inconsistent with a post-arrest statement made to police after being informed of his right to remain silent, the prosecutor may confront the defendant with the inconsistencies. *People v. Rehbein* (1978), 74 Ill. 2d 435, 443, 386 N.E.2d 39, 42; *People v. Graves* (1986), 142 Ill. App. 3d 885, 890-92, 492 N.E.2d 517, 521-23.

Also, where a defendant has expressly waived his right to remain silent and made a statement, the *Doyle* rule is generally inapplicable. *People v. Trumbull* (1978), 67 Ill. App. 3d 262, 264, 384 N.E.2d 842, 844; *People v. Henson* (1978), 58 Ill. App. 3d 42, 46, 373 N.E.2d 852, 855. *People v. Jones* (1992), 240 Ill. App. 3d 213, 221.

■ In the case at bar, we note that this was a bench trial and the trial court clearly indicated that, although the defendant had already made an oral statement, his silence would not be held against him. Assuming *arguendo* that the trial court erred in allowing such testimony, the error did not constitute plain error.

## V

Defendant next contends that the case should be remanded for resentencing because the presentence report available to the court contained very little information and because the information provided was old. We disagree.

During the sentencing hearing, the following colloquy took place:

"MR. SOROSKY: [Defense Counsel]: I have a presentence report from Judge Morrisey's case.

THE COURT: Do you want to proceed on that?

MR. SOROSKY: I have one here.

MR. KLAPMAN [Assistant State's Attorney]: How about Judge Pomaro?

MR. SOROSKY: Fine.

THE COURT: It's dated May 10th.

MR. KLAPMAN: May 10th of this year. I believe the defendant has been in custody since then and nothing has changed.

THE COURT: Mr. Sorosky, do you agree to that?

MR. SOROSKY: He was taken into custody the 2nd of May, I agree.

THE COURT: So we don't need another presentence?

MR. SOROSKY: No."

■ It is the obligation of the defendant to bring to the attention of the sentencing court any alleged deficiency or inaccuracy in the presentence investigation report. *People v. Meeks* (1980), 81 Ill. 2d

524, 533, 411 N.E.2d 9, 14; *People v. Stewart* (1989), 186 Ill. App. 3d 833, 837, 542 N.E.2d 915, 919; *People v. Barfield* (1989), 187 Ill. App. 3d 190, 206, 543 N.E.2d 812, 821.

Defendant has waived any purported deficiency in the presentence report with respect to its lack of current information.

## VI

Defendant contends that the trial court erred in denying defendant credit for time served awaiting trial on a theory that he is not entitled to it because he received credit for the time against a sentence in another case. We disagree.

Sections 5—8—7(b) and (c) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—7(b), (c)) provide:

"(b) The offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed ***.

(c) An offender arrested on one charge and prosecuted on another charge for conduct which occurred prior to his arrest shall be given credit on the determinate sentence or maximum term and the minimum term of imprisonment for time spent in custody under the former charge not credited against another sentence."

██ The court, acting in conformance with the statute, denied defendant credit for time served while awaiting trial in this case. The statute required a consecutive sentence because defendant had already received credit for the time he had served while awaiting trial on another case for a previous offense.

In *People v. Pluskis* (1987), 162 Ill. App. 3d 449, 515 N.E.2d 480, the defendant contended that the trial court erred when it gave him credit against his sentence for time spent in jail as to one sentence and not as to both. The defendant in *Pluskis* received consecutive sentences. The *Pluskis* court held that

"[b]ecause one sentence does not begin to run until the other has been completed, to give him credit as to both sentences would serve to reduce his sentence by twice the time of the defendant's prior incarceration." *Pluskis*, 162 Ill. App. 3d at 455, 515 N.E.2d at 484.

The court further deemed that such double credit was not intended. *Pluskis*, 162 Ill. App. 3d at 455, 515 N.E.2d at 484.

Following *Pluskis*, we find no error.

## VII

Defendant finally contends that his consecutive sentences should be modified to run concurrently because the application of the statute was dictated by a factor which is completely arbitrary. We disagree.

*People v. Williams* (1989), 184 Ill. App. 3d 1094, 540 N.E.2d 832, is dispositive. In *Williams*, the defendant was originally charged with residential burglary. While on pretrial release in that case, the defendant committed the offenses of armed violence and aggravated battery. On December 30, 1987, the defendant was convicted of armed violence but was not sentenced. On January 5, 1988, he entered a plea of guilty to residential burglary and was sentenced to a consecutive term of 10 years' imprisonment on the armed violence conviction.

The defendant in *Williams* argued that he was not eligible for a consecutive sentence because the statute in effect at the time of the offense did not provide for such and, therefore, the 10-year armed violence sentence should be vacated. (*Williams*, 184 Ill. App. 3d at 1095, 540 N.E.2d at 833.) At the time the offenses were committed, the Unified Code of Corrections, section 5—8—4(h), provided:

> "If a person charged with a felony commits a separate felony while on pre-trial release, any sentence imposed upon conviction of that separate felony shall be consecutive to any sentence imposed upon conviction of the original felony." Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(h).

The defendant in *Williams* contended that the statute contemplated that a defendant will be first convicted and sentenced for the original felony, and then convicted and sentenced for the felony committed while on pretrial release. The defendant contended that because he was first tried for the pretrial offenses rather than the original felony, a consecutive sentence was improper.

As in the case at bar, the defendant in *Williams* referred to the amendment of the Unified Code of Corrections, section 5—8—4(h). The amended provision provides:

> "If a person charged with a felony commits a separate felony while on pre-trial release, the sentences imposed upon conviction of *these felonies shall be served consecutively regardless of the order in which the judgments of conviction are entered.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(h).

■ Here, as in *Williams*, the defendant argues that the statute was amended because the legislature realized the quirk in the law applicable to a case such as his and, therefore, changed the statute to

provide that a consecutive sentence can be imposed regardless of the order of the convictions. However, the court in *Williams* held:

"We find that section 5—8—4(h) as enacted at the time these offenses were committed required only that the defendant be sentenced on the original felony before he was sentenced for the felony committed while on pre-trial release. [Citation.] The unambiguous language of the statute imposed no requirement that the convictions occur in a certain order. Further, there is no convincing legal or practical rationale for implying such a requirement." *Williams*, 184 Ill. App. 3d at 1096, 540 N.E.2d at 833.

The *Williams* court further held:

"With regard to the defendant's argument that in amending the statute the legislature intended to effect some change in the law as it formerly existed, we note that a subsequent amendment may be interpreted to indicate a legislative intent to clarify the law rather than change it. [Citations.] Thus, to the extent one could argue that an ambiguity existed in the prior statute, the legislature's amendment merely clarified its intent that in imposing a consecutive sentence the order in which convictions were entered would be of no effect." *Williams*, 184 Ill. App. 3d at 1096-97, 540 N.E.2d at 834.

The court in *Williams* determined that the trial court properly imposed a consecutive sentence for the armed violence conviction.

Here, the offense occurred on December 9, 1988, which is subsequent to the enactment of the amendment. The applicable statute, therefore, includes the amendment which served to clear any alleged ambiguity in the statute. As such, the issue as to the chronology of sentencing is moot.

However, we note that, even if we were to apply the statute prior to amendment, the *Williams* case articulates that the order of convictions is irrelevant and that no convincing legal or practical rationale for mandating such order exists. Therefore, the trial court properly imposed a consecutive sentence where it was mandated by statute.

As the attached garage was not a dwelling, the trial court erred in finding the defendant guilty of residential burglary.

Reversed.

MURRAY and McNULTY, JJ., concur.