Bernice Milton **GARRETT**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 1999–SC–0356–MR.

Supreme Court of Kentucky.

June 14, 2001.

As Amended June 19, 2001.

10. Ky., 896 S.W.2d at 910.

11. Ky., 956 S.W.2d 204 (1997).

12. Ky., 841 S.W.2d at 190.

13. Ky., 896 S.W.2d at 910.

V. Gene Lewter, Fayette County Legal Aid, Inc., Lexington, Counsel for Appellant.

A.B. Chandler, III, Attorney General, David A. Smith, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

Appellant Bernice Milton Garrett was convicted in the Fayette Circuit Court of one count of first-degree rape, one count of second-degree sodomy, three counts of first-degree sexual abuse, and two counts of second-degree sexual abuse, all perpetrated against his biological daughter, T.J., during the period extending from approximately 1991 through December 1997. Appellant was sentenced to concurrent terms of imprisonment of twenty-four years for rape, six years for sodomy, two years each for first-degree sexual abuse, and twelve months each for second-degree sexual abuse. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), asserting that (1) there was insufficient evidence to convict him of first-degree rape; (2) Dr. Katherine Bright should not have been permitted to repeat the history of sexual abuse related to her by T.J.; (3) the contents of a diary kept by T.J. during the period in question should have been admitted in its entirety; and (4) defense counsel should have been permitted during closing argument to discuss the fact that T.J. was pregnant at the time of trial. Finding no reversible error, we affirm.

T.J.'s date of birth was December 26, 1984. Until December 1997, she lived in the same household with Appellant. T.J. testified that Appellant began sexually abusing her when she was six years old, at first fondling her chest and vaginal areas, later subjecting her to oral sodomy, and, finally, to sexual intercourse. Three other witnesses partially corroborated her testimony. T.J.'s mother, Hazel Garrett, testified that when T.J. was approximately ten years old, she (Mrs. Garrett) entered a bedroom and discovered T.J. lying on her back on the bed with her legs up and Appellant positioned between her legs looking at her vaginal area. Appellant explained that T.J. had complained of a rash and that he was examining it. T.J.'s elementary school friend, E.C., testified that, when she and T.J. were in the fifth grade, she visited the Garrett residence

and observed Appellant place his hand on T.J.'s upper thigh. Upon becoming aware of E.C.'s presence, Appellant removed his hand from T.J.'s thigh and T.J. became visibly upset. A neighbor, Georgia Duncan, testified that, on December 5, 1997, she went to the Garrett home to inform Appellant of the death of a mutual acquaintance. Upon reaching the front door, she observed T.J. lying on her back on the couch wearing a short nightgown with Appellant crouched between her legs and fondling her vagina. Duncan testified that it appeared as if Appellant was giving T.J. a pelvic examination.

Appellant was arrested on January 19, 1998 and arraigned in the Fayette District Court the following day. He was waived to the grand jury on January 27, 1998 and indicted on March 23, 1998. Meanwhile, Dr. Katherine Bright, a pediatrician specializing in sexual abuse evaluations, examined T.J. on February 9, 1998. She obtained a history from T.J., then performed a complete pediatric examination. Examination of T.J.'s vaginal area revealed no abnormalities except a nonspecific fragility of the posterior fourchette, which Dr. Bright testified could be attributable to any one of a number of possible causes unrelated to sexual abuse. The examination revealed no sexually transmitted diseases, no pregnancy, and an intact hymen. The doctor testified that a normal pelvic examination does not rule out a history of sexual abuse and an intact hymen does not rule out a history of sexual intercourse. She explained that the hymen does not always rupture during intercourse and that child victims are often too inexperienced to accurately describe the extent of penetration that occurred during an alleged act of sexual intercourse. Since the examination was essentially normal, no treatment was rendered.

## I. SUFFICIENCY OF THE EVIDENCE.

Appellant asserts there was insufficient evidence to convict him of first-degree rape. He argues that T.J.'s trial testimony with respect to the dates on which the alleged abuse occurred so varied from the statements she gave to the police, as reflected by the indictment, that her credibility was insufficient to support a conviction absent corroboration; and that Dr. Bright's testimony did not corroborate T.J.'s claim that she had engaged in sexual intercourse. *See Carrier v. Commonwealth*, Ky., 356 S.W.2d 752 (1962).

The standard of review with respect to the sufficiency of the evidence is as stated in *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991):

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

The indictment described eleven separate offenses and recited the year each offense was alleged to have occurred. At trial, T.J. testified not to the year each offense was committed, but to her age at the time each offense was committed. We agree with the Court of Appeals' observation in *Farler v. Commonwealth*, Ky.App., 880 S.W.2d 882, 886 (1994), that it is "wholly unreasonable to expect a child of such tender years to remember specific dates, especially given the long time period over which the abuse occurred." As in *Hamp-*

ton v. Commonwealth, Ky., 666 S.W.2d 737 (1984), the evidence here was as specific as is usually found in such cases and ample to separately identify the various offenses charged.

■ Corroboration in a child sexual abuse case is required only if the unsupported testimony of the victim is "...contradictory, or incredible, or inherently improbable." Robinson v. Commonwealth, Ky., 459 S.W.2d 147, 150 (1970); see also Commonwealth v. Cox, Ky., 837 S.W.2d 898, 900 (1992); Dyer v. Commonwealth, Ky., 816 S.W.2d 647, 651 (1991), overruled on other grounds, Baker v. Commonwealth, Ky., 973 S.W.2d 54 (1998). Otherwise, discrepancies in the victim's testimony are matters of credibility going to the weight to be given by the jury to the child's testimony. Commonwealth v. Cox, supra, at 900.

T.J.'s testimony occasionally contradicted her previous statements to the police as to her age and the exact nature of Appellant's conduct with respect to the alleged offenses. To the extent that her testimony as to her age and Appellant's conduct corresponded with the year and the offense charged in the indictment, Appellant's motions for directed verdict were overruled. To the extent that it did not, the motions were granted. The trial judge directed verdicts of acquittal with respect to Count 4 (second-degree rape in 1996), Count 7 (first-degree sodomy in 1995), and Count 8 (first-degree sexual abuse in 1995); and reduced Count 1 (first-degree rape in 1991) and Count 6 (first-degree sodomy in 1994) to first-degree sexual abuse and second-degree sodomy, respectively. The jury found Appellant not guilty under Count 2 (first-degree rape in 1994) and found Appellant guilty under Count 5 not of the charged offense of first-degree sodomy, but of the lesser included offense of first-degree sexual abuse. Thus, the trial

judge carefully considered the evidence in ruling on the motion for directed verdicts of acquittal, and the jury found Appellant guilty only of those offenses that were supported by T.J.'s testimony at trial. As to Count 3, first-degree rape in 1995 or 1996, T.J. testified that when she was eleven years old, Appellant had sexual intercourse with her, that the penetration was "just a little bit," and that it "hurt." (T.J.'s eleventh birthday occurred on December 26, 1995.) There was nothing so contradictory, incredible or inherently improbable about this testimony as to require corroboration.

## II. HEARSAY EVIDENCE: KRE 803(4).

■ Dr. Bright testified that when she examined T.J. on February 9, 1998, T.J. gave her a history of being sexually abused from age seven, including sexual touching, oral sodomy, and sexual intercourse. Dr. Bright was not permitted to repeat T.J.'s identification of the perpetrator or the details of the sexual acts described by T.J. Appellant asserts that Dr. Bright was an examining physician, not a treating physician, and, thus, her repetition of the history related to her by T.J. should have been excluded on grounds that its prejudicial effect outweighed its probative value. Drumm v. Commonwealth, Ky., 783 S.W.2d 380, 385 (1990); see also Miller v. Commonwealth, Ky., 925 S.W.2d 449, 451 (1995); Bell v. Commonwealth, Ky., 875 S.W.2d 882, 887–88 (1994); Sharp v. Commonwealth, Ky., 849 S.W.2d 542, 544–45 (1993). The Commonwealth responds that Dr. Bright was, in fact, a treating physician, because she testified that she saw T.J. for the purpose of both examination and treatment, thus obviating the need to apply the balancing test described in Drumm, supra. We conclude that the distinction between treating and examining

physicians was eliminated by the adoption of KRE 803(4); thus, the balancing test as described in *Drumm* no longer applies.

Prior to *Drumm,* the common law rule in Kentucky was that a physician consulted for the purpose of prescribing treatment could testify to the case history related by the patient, but that a physician consulted only for the purpose of examination or evaluation could not. *Mary Helen Coal Corp. v. Bigelow,* Ky., 265 S.W.2d 69, 70 (1954).[1] This was also the rule generally applied in federal courts prior to 1975. *See e.g., Padgett v. S. Ry. Co.,* 396 F.2d 303 (6th Cir.1968); *United States v. Calvey,* 110 F.2d 327 (3rd Cir.1940); *United States v. Nickle,* 60 F.2d 372 (8th Cir.1932). This distinction between "treating" and "examining" physicians was eliminated in the federal courts with the 1975 adoption of the Federal Rules of Evidence (FRE). Pub.L. 93–595, § 1, Jan. 2, 1975, 88 Stat. 1939. FRE 803(4) codified a hearsay exception for:

> Statements made for purposes of medical *diagnosis or* treatment and describing *medical history,* or past or present symptoms, pain, or sensations, or the inception or general character of the *cause or external source* thereof insofar as *reasonably pertinent to diagnosis or* treatment. (Emphasis added.)

The FRE Advisory Committee left no doubt that the rule was drafted with an intent to eliminate the distinction between statements made to treating as opposed to examining physicians.

Conventional doctrine has excluded from the hearsay exception, as not within its guarantee of truthfulness, statements to a physician consulted only for the purpose of enabling him to testify. While these statements were not admissible as substantive evidence, the expert was allowed to state the basis of his opinion, including statements of this kind. The distinction thus called for was one most unlikely to be made by juries. *The rule accordingly rejects the limitation.* This position is consistent with the provision of Rule 703 that the facts on which expert testimony is based need not be admissible in evidence if of a kind ordinarily relied upon by experts in the field.

FRE 803(4) Advisory Committee's Note (1972) (emphasis added). There has been some dispute as to what information is "reasonably pertinent" to diagnosis or treatment. For example, statements identifying the perpetrator have been held "reasonably pertinent" to diagnosis *and* treatment of a child sexual abuse victim where the treatment was for psychological injuries and the abuser lived with the child, the theory being that the abuse would likely continue as long as the child remained in the same household with the abuser. *United States v. Renville,* 779 F.2d 430, 436–37 (8th Cir.1985); *Edwards v. Commonwealth,* Ky., 833 S.W.2d 842, 844 (1992) (decided prior to adoption of the Kentucky Rules of Evidence). Whether this analysis would apply if the physician were seeing the child only for diagnosis and not for treatment has not been addressed in the federal courts, although it was noted in the leading case of *United*

---

1. This rule was later extended to preclude "examining" physicians from expressing opinions based wholly or in part on case history. *Big Sandy Cmty. Action Program v. Chaffins,* Ky., 502 S.W.2d 526 (1973). We are not required to decide here the effect of the adoption of KRE 703(a) on this common law rule; however, the Commentary to KRE 703(a), which is identical to Federal Rule 703(a), states that "[t]he Federal Rules make no distinction between so-called 'testifying' and 'treating' physicians in so far as expert opinion is concerned. Subdivision (a) intends to adopt the same position for Kentucky." Commentary to KRE 703(a), Evidence Rules Study Committee, Final Draft (1989).

*States v. Iron Shell,* 633 F.2d 77 (8th Cir. 1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981) that statements of identity are "seldom if ever" pertinent to diagnosis or treatment. *Id.* at 84; *see also Souder v. Commonwealth,* Ky., 719 S.W.2d 730, 735 (1986) (decided prior to adoption of the Kentucky Rules of Evidence); *State v. Jones,* 625 So.2d 821 (Fla. 1993); *People v. Pluskis,* 162 Ill.App.3d 449, 113 Ill.Dec. 671, 515 N.E.2d 480 (1987), *abrogated on other grounds, People v. Hill,* 294 Ill.App.3d 962, 229 Ill.Dec. 324, 691 N.E.2d 797 (1998); *Cassidy v. State,* 74 Md.App. 1, 536 A.2d 666 (1988), *superseded by rule in, Walker v. State,* 107 Md.App. 502, 668 A.2d 990 (1995); *People v. LaLone,* 432 Mich. 103, 437 N.W.2d 611 (1989); R. Mosteller, *Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis and Treatment,* 67 N.C. L.Rev. 257, 264–67 (1989). However, the federal cases have uniformly held that the adoption of FRE 803(4) "abolished the distinction between the doctor who is consulted for the purpose of treatment and an examination for purpose of diagnosis only; the latter usually refers to a doctor who is consulted only in order to testify as a witness." *United States v. Iron Shell, supra,* at 83; *see also United States v. Farley,* 992 F.2d 1122, 1125 (10th Cir.1993); *Morgan v. Foretich,* 846 F.2d 941, 950 (4th Cir.1988); *O'Gee v.. Dobbs Houses, Inc.,* 570 F.2d 1084 (2d Cir.1978).

*Drumm v. Commonwealth, supra,* was decided in January 1990, more than two years prior to the adoption of the Kentucky Rules of Evidence. *Drumm* departed from the previous ·common law rule of automatic exclusion of statements made to examining physicians and formulated a new rule that was, in fact, a modified version of FRE 803(4). While purporting to judicially adopt FRE 803(4), *Drumm* specifically retained the distinction between examining and treating physicians, thus rejecting *sub silentio* the holdings in *United States v. Iron Shell, supra,* and *Morgan v. Foretich, supra.* While not automatically excluding hearsay statements of medical history related to examining physicians, *Drumm* required exclusion if the " 'prejudicial effect outweighs … probative value,' taking into account that when such statements are not made for the purpose of treatment they have 'less inherent reliability than evidence admitted under the traditional common-law standard underlying the physician treatment rule.' " *Drumm,* 783 S.W.2d at 385.[2] This hybrid of the former common law rule and FRE 803(4) was borrowed from a concurring opinion written by United States Supreme Court Justice Lewis Powell sitting with a panel of the Fourth Circuit Court of Appeals in *Morgan v. Foretich, supra.* As previously noted, the majority in *Morgan* rejected this view; and rehearing was denied *en banc.* No other federal or state court has adopted Justice Powell's interpretation of Rule 803(4),[3] presumably because his view directly contradicts the plain language of the rule, *i.e.,* "statements made for purposes of *diagnosis or* treatment" (empha-

---

**2.** *Jones v. Commonwealth,* Ky., 833 S.W.2d 839 (1992) subsequently held that this language did not require a preliminary hearing to determine admissibility on each and every occasion when such evidence is offered, but only that the party offering the evidence lay a sufficient foundation to show the relevance and reliability of the hearsay statements. In *Jones,* the statements were found reliable be- cause they were "made in order for the child to receive medical treatment." *Id.* at 841. *Jones* did not explain what foundation would suffice to ensure reliability of statements made solely for the purpose of diagnosis.

**3.** Adoption of Justice Powell's view was urged to no avail in a concurring opinion in *Montoya v. State,* 822 P.2d 363, 368–69 (Wyo.1991).

sis added), and is directly contrary to the intent of the rule as expressed in the Advisory Committee's Note, *supra*.

Furthermore, the balancing test recommended by Justice Powell in *Morgan v. Foretich* was that contained in FRE 403 (subsequently adopted in Kentucky with minor modification as KRE 403), *i.e.*, "evidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice." (KRE 403 substitutes "undue" for "unfair.") Under *Drumm*, the evidence is excluded if its "prejudicial effect outweighs [its] probative value," 783 S.W.2d at 385, a significantly lesser threshold for exclusion.

The *Drumm* rule was subsequently applied to exclude hearsay statements of medical history in *Bell v. Commonwealth*, *supra*, *Sharp v. Commonwealth*, *supra* and *Miller v. Commonwealth*, *supra*. The offenses in *Bell* and *Sharp* were committed prior to July 1, 1992, the effective date of the Kentucky Rules of Evidence. *See* KRE 107(b). The offense in *Miller* was committed after July 1, 1992; however, the only pertinent issue addressed in *Miller* was whether the physician was, in fact, a treating physician or an examining physician. The effect of the adoption of KRE 803(4) on that issue was neither raised nor decided in *Miller*.

The Kentucky Rules of Evidence were drafted with the intent of conformance with the Federal Rules.

An early decision was made by the Committee to strive for uniformity with the Federal Rules of Evidence and to propose a departure from the Federal Rules only for good reason. Uniformity between the state and federal rules would serve the purpose of minimizing the possibility of forum shopping and would in time add to the efficiency of the judicial system. The Federal Rules have been in operation since 1975; several states have adopted Rules patterned after the Federal Rules. As a result there is a substantial and growing body of case law construing these Rules, case law which can be of invaluable assistance in the application of a new set of evidence rules for Kentucky.

Prefatory Note, Evidence Rules Study Committee, Final Draft (1989). *See also* R. Lawson, *Interpretation of the Kentucky Rules of Evidence—What Happened to the Common Law?* 87 Ky. L.J. 517, 527 (1999).

The language of KRE 803(4) is identical to that of its federal counterpart. Specifically, the Rule does not distinguish between statements made to treating and examining physicians and does not include the balancing test described in *Drumm*. KRE 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the Commonwealth of Kentucky, by acts of the General Assembly of the Commonwealth of Kentucky, by these rules, or by other rules adopted by the Supreme Court of Kentucky.

This general rule of inclusion contains no exception for preexisting case law. The Commentary explains that the phrase "other rules adopted by the Supreme Court of Kentucky" refers to "rules of court promulgated by the Supreme Court of Kentucky," *i .e.*, the Civil and Criminal Rules of Procedure. Commentary to KRE 402, Evidence Rules Study Commission (Final Draft 1989). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 585–90, 113 S.Ct. 2786, 2792–94, 125 L.Ed.2d 469 (1993), the United States Supreme Court analyzed the effect of the adoption of the Federal Rules on preexisting case law, specifically, the effect of the adoption of FRE 702 on the preexisting

"general acceptance" test[4] for determining the reliability of scientific evidence. The Court concluded that when there is an adopted Rule of Evidence that speaks to the contested issue, the adopted Rule occupies the field and supersedes the former common law interpretation. *Id.* at 587–89, 113 S.Ct. at 2794.[5] Preexisting common law remains only as a body of knowledge existing "in the somewhat altered form as a source of guidance in the exercise of delegated powers." *Id.* at 588, 113 S.Ct. at 2794 (quoting E. Cleary,[6] *Preliminary Notes on Reading the Rules of Evidence*, 57 Neb. L.Rev. 908, 915 (1978)). *See also* Lawson, *supra*, at 560–61, 569.

We conclude that the hybrid rule enunciated in *Drumm*, which labeled as "inherently unreliable" a statement made to a physician solely for the purpose of diagnosis and which required exclusion of such a statement if its prejudicial effect merely outweighed its probative value, did not survive the adoption of KRE 803(4). To the extent that *Miller v. Commonwealth*, *supra*, could be interpreted otherwise, it is overruled.

■ Of course, KRE 803(4) is but an exception to the hearsay rule, not a rule of relevancy. *Cf. Moseley v. Commonwealth*, Ky., 960 S.W.2d 460, 461 (1997) (an out-of-court statement must satisfy the requirements of both Article IV and Article VIII of the Kentucky Rules of Evidence). Thus, a statement made to an examining physician for the purpose of diagnosis, like

any other relevant evidence, is subject to exclusion "if its probative value is *substantially outweighed* by the danger of *undue* prejudice [not if its prejudicial effect merely outweighs its probative value per *Drumm*], confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403 (emphasis added). This balancing test is reserved to the sound discretion of the trial judge. *Commonwealth v. English*, Ky., 993 S.W.2d 941, 945 (1999). We find no abuse of discretion in the admission of the sanitized version of the history given by T.J. to Dr. Bright in this case.

### III. REAL EVIDENCE: THE VICTIM'S DIARY.

During direct examination, T.J. admitted that she had kept a diary during part of the period when the sexual abuse was supposed to have occurred, and that the diary did not include the detailed acts of sexual abuse described in her testimony. She explained that the diary was mostly fictional and was written primarily for entertainment purposes. On cross-examination, apparently to prove bias and a motive to falsify, defense counsel had T.J. read from certain entries in the diary in which she had written that she hated Appellant, that he was "tight," that he drank alcohol and smoked, and that "I hate the way he treats me." On redirect examination, the prosecutor authenticated and offered into evidence one redacted page of the diary that

---

4. *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923).

5. *Compare United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), which held that evidence of bias for impeachment purposes was admissible under the general rule of inclusion, FRE 402, even though there is no specific Rule that speaks to that issue. *See also Stringer v. Commonwealth*, Ky., 956 S.W.2d 883, 891–92 (1997), *cert. denied*, 523

U.S. 1052, 118 S.Ct. 1374, 140 L.Ed.2d 522 (1998) where no Kentucky Rule of Evidence addressed the contested issue, *i.e.*, whether a witness could express an opinion as to the ultimate issue, because Kentucky did not adopt a counterpart to FRE 704.

6. Professor Cleary served as Reporter for the FRE Advisory Committee and was the principal drafter of the Federal Rules of Evidence.

contained a statement that "my dad got mad because he wanted ... to f— me again." Defense counsel did not move to introduce the entire diary, but objected to the prosecutor's motion to introduce one page because "I think it all has to come in if you introduce it." Defense counsel admitted that he had read the diary in its entirety and had found "nothing in there that particularly helps or hurts" Appellant, specifically, "nothing exculpatory." The trial judge admitted the page offered by the prosecutor. T.J. was not questioned further about the diary either in open court or by avowal. The diary, itself, was not introduced by avowal and is not included in the record on appeal.

KRE 106 provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

The Rule does not require introduction of the complete document merely because a portion of the document is offered into evidence. As explained in *Gabow v. Commonwealth*, Ky., 34 S.W.3d 63 (2000), the "fairness" aspect of the Rule is intended to prevent a misleading impression as a result of an incomplete reproduction of a statement. *Id.* at 68 n. 2 (quoting *Commonwealth v. Collins*, Ky., 933 S.W.2d 811, 814 (1996) and R. Lawson, *The Kentucky Evidence Law Handbook* § 1.20, at 48 (3d ed. Michie 1993)). Having candidly admitted that there was nothing "helpful" or "exculpatory" in the remainder of the diary, defense counsel essentially admitted that the exclusion of the remaining portions of the diary did not hinder or jeopardize Appellant's trial strategy or theory of the case. *Commonwealth v. Collins*, *supra*, at 814.

■ Appellant now claims that it was "unfair" not to require introduction of the entire diary because such prevented the jury from considering the truth of T.J.'s claim that the diary was mostly fictional. This theory was not presented to the trial judge, thus was not preserved for review. *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219, 222 (1976). Nor was the issue preserved by avowal. *Commonwealth v. Ferrell*, Ky., 17 S.W.3d 520 (2000). While KRE 103(a)(2) and RCr 9.52 are both couched in terms of preserving oral testimony as opposed to real evidence, a fair reading of those rules requires avowal testimony to authenticate the document or object, then a tender of the document or object to the court as an avowal exhibit. "Real evidence is usually offered by tendering exhibits, having them marked for identification, and asking that they be admitted into evidence." R. Lawson, *The Kentucky Evidence Law Handbook*, *supra*, § 1.10 II, at 21.

## IV. CLOSING ARGUMENT.

On the morning of trial, the prosecutor advised the trial judge and defense counsel that T.J. was obviously pregnant and that Appellant was not responsible for her pregnancy. It was agreed that the jury would be informed of that fact so as to avoid the possibility of any prejudice against Appellant. It was also agreed that T.J. would not be questioned about her pregnancy, presumably in accordance with KRE 412, the so-called "rape shield law," which prohibits the introduction of evidence of a victim's past sexual behavior, subject to three exceptions, none of which apply to this case. Accordingly, prior to *voir dire*, the prosecutor informed the jury of T.J.'s pregnancy and clarified that Appellant was not responsible:

During the course of the trial today, during the course specifically of [T.J.'s]

testimony, you're going to learn that she is currently pregnant. . . . We are not alleging in any way that this baby that [T.J.] is carrying is her father's—or the defendant in this case. You're going to see that she's pregnant, so I want to make sure that everyone understands that.

■ Dr. Bright testified at trial that child sexual abuse victims are often too inexperienced to accurately describe the extent of penetration that occurred during an alleged act of sexual intercourse. During closing argument, defense counsel remarked that since T.J. was pregnant, she now knew how much penetration constituted sexual intercourse. The trial judge sustained the prosecutor's objection, prohibited defense counsel from making any further reference to T.J.'s pregnancy, and admonished the jury to disregard that portion of the argument. Appellant asserts that the trial judge's ruling and admonition constituted reversible error.

■ Attorneys are allowed great latitude in their closing arguments. They may draw reasonable inferences from the evidence and propound their explanations of the evidence and why the evidence supports their respective theories of the case. *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13, 38–39 (1998), *cert. denied*, 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999). However, they may not argue facts that are not in evidence or reasonably inferable from the evidence. *Coates v. Commonwealth*, Ky., 469 S.W.2d 346 (1971); *Parsley v. Commonwealth*, Ky., 306 S.W.2d 284 (1957). Appellant argues that the fact of T.J.'s pregnancy was in evidence because as soon as she entered the courtroom, the jurors could plainly see that she was pregnant.

It is simply wrong to say that everything the jury sees or observes during the course of a trial is "evidence." *E.g.:*

It has been made abundantly clear in civil cases that what is observed in the course of a jury view is not evidence. . . . "What is observed by them in the course of the view is not evidence.". . .

There is no reason for any difference in this respect between civil and criminal proceedings.

*Barnett v. Commonwealth*, Ky., 403 S.W.2d 40, 45 (1966) (quoting *Commonwealth, Dep't of Highways v. Hackworth*, Ky., 400 S.W.2d 217, 220 (1966)). The cases cited in Justice Keller's concurring opinion, *ante*, deal with the jury's observation of a witness's demeanor, *i.e.*, facial expressions, fidgeting, etc., as indications of truthfulness or lying. Pregnancy is not demeanor; it is a condition.

For purposes of the offenses of which Appellant was convicted, sexual intercourse "occurs upon any penetration, however slight." KRS 510.010(8). T.J. testified that Appellant penetrated her "just a little bit." The fact of T.J.'s subsequent unrelated pregnancy did not contradict this testimony or that of Dr. Bright. Had the Commonwealth not agreed to inform the jury prior to trial that T.J. was pregnant and that Appellant did not cause the pregnancy, KRE 412 alone would have prohibited the remark made by defense counsel in closing argument. In fact, the remark did not relate so much to the fact that T.J. was pregnant as to the fact that her pregnancy proved her familiarity with sexual intercourse. Thus viewed, the remark was but a disingenuous attempt to circumvent the rape shield law.

Pregnancy, of course, can occur in this day and age without sexual intercourse. There is no evidence in this case (and, admittedly, little likelihood) that T.J. was impregnated by artificial insemination. Nor, however, is there any evidence to the contrary. That is why jurors are instruct-

ed to decide cases on the basis of the evidence and attorneys are required to limit their arguments to the evidence presented. Neither the fact nor the cause of T.J.'s pregnancy was in evidence at this trial; thus, it was not a proper subject for closing argument. Equally important, the trial judge did not err in holding defense counsel to his agreement and to the strictures of KRE 412.

Accordingly, the judgments of conviction and sentences imposed by the Fayette Circuit Court are affirmed.

All concur.

LAMBERT, C.J., concurs by separate opinion as to Part II, in which STUMBO, J., joins.

KELLER J., concurs by separate opinion as to Part IV, in which LAMBERT, C.J., and STUMBO, J., join.

LAMBERT, Chief Justice, Concurring.

While I concur with the majority opinion, I disagree with Part II which overrules a long line of important decisions of this Court. Even if the majority believes these decisions should be overruled, it is unnecessary in this case as Dr. Bright was clearly a treating physician.

This Court has long observed the view that statements of medical history given to treating physicians were reliable, while such statements given to physicians who merely examine for the purpose of collecting evidence lacked reliability. This view was articulated in *Drumm v. Commonwealth*, Ky., 783 S.W.2d 380 (1990), and followed in a number of subsequent decisions. On the view that KRE 803(4) amounts to an adoption of federal decisions decided on similar language in the federal rules of evidence, the majority has abandoned Kentucky precedent. In part, this is based on a dubious construction of KRE 403. I do not believe that adoption of the Kentucky Rules of Evidence required a wholesale abandonment of pre–1992 evidence law precedent.

As *Drumm* and other cases make clear, exclusion of the history given by the person being examined serves to prevent bolstering or lending of physician credibility to the version of evidence told by the witness or party in interest in circumstances where the physician has no direct knowledge. Without such a rule of exclusion, inevitably the jury or trier of fact will tend to give greater weight to the testimony of the witness simply because it is repeated by the physician, when in fact, there is only one version and the physician is merely repeating it.

STUMBO, J., joins this concurring opinion.

KELLER, Justice, Concurring.

Although I concur in the result reached by the majority, I believe the trial court improperly instructed the jury to disregard a portion of defense counsel's closing argument, and I therefore write separately as to Section IV. In my opinion, Garrett's trial counsel's commentary regarding the complaining witness's knowledge of sexual penetration at the time of trial fell within the latitude we allow attorneys during closing argument.[1] While I believe the trial court erred when it sustained the Commonwealth's objection and admonished the jury to disregard trial counsel's statement, I do not believe the error warrants reversal because it caused Garrett no prejudice.

1. *See Derossett v. Commonwealth*, Ky., 867 S.W.2d 195, 197–98 (1993) ("Attorneys are to be given great leeway in arguments." *Id.*).

At trial, Garrett denied committing the sexual offenses and attempted to attack the primary evidence of his guilt by impeaching the credibility of the complaining witness, T.J., and demonstrating the dearth of corroborating evidence. Consistent with its theory of the case, the defense attempted to prove inconsistency between the complaining witness's testimony that Garrett had penetrated her vaginally and the examining physician's normal gynecological findings. On cross-examination, however, the physician, Dr. Bright, volunteered that child sexual abuse victims are often inexperienced and inaccurately describe the extent of penetration from sexual intercourse. Defense counsel's goal was to persuade the jury that, although some children may give inaccurate descriptions, T.J.'s testimony at trial that Garrett had "gone in all the way and it hurt" was a fabrication rather than a misunderstanding. Toward that end, trial counsel attempted to distinguish this case from other cases in which child sexual abuse is alleged by observing that, because of her pregnancy, T.J. likely possessed enough information to correctly describe such an event. Thus, during closing argument, trial counsel referred to T.J.'s pregnancy when he stated: "[T.J.] knows the difference between what we've been calling 'attempt' and what penetration is. She's pregnant, and if she didn't know then, she sure knows now."

The majority contends this statement was improper commentary because there was no evidence introduced at trial from which counsel could draw such a reasonable inference. While I agree completely that attorneys may not argue facts without some evidentiary support,[2] I beg to differ with the majority's strained interpretation of "facts in evidence." In my opinion, a fact is "in evidence" when the jury can visually observe and recognize that fact from the jury box.

I have a picture of a horse in my office, but nowhere on the picture does it state that it is a picture of a horse. Yet, everyone who sees the picture recognizes it as a horse. T.J.'s pregnancy was equally recognizable. Not one person in the courtroom who even glanced at T.J. during her testimony could have possibly harbored any doubt that she was pregnant and I believe the fact of her pregnancy was thus a fact in evidence.

During a bench conference at the beginning of the voir dire examination, the Commonwealth recognized that any juror with the ability to see would quickly discover T.J.'s pregnancy and thus sought advice and consent from the trial court on how best to avoid the possibility of prejudicing the defendant:

> She's very pregnant—nine months pregnant. Since she's going to walk in here looking pregnant, that's something that we're going to have to address.

As the majority observes, the Commonwealth informed the jury about T.J.'s pregnancy during its voir dire and clarified that Garrett was not responsible. Once again, just before the Commonwealth called T.J. as its first witness, the Assistant Commonwealth's Attorneys asked to approach the bench and emphasized just how undeniably pregnant T.J. was by advising the trial court that T.J. had just experienced some "dizziness and lightheadedness" which they hoped were not labor-related. Less than a minute later, T.J. entered the courtroom and was sworn as a witness. The video record reflects a fourteen (14) year old girl visibly in the ninth month of pregnancy. If any member of the jury missed the disclosure during voir dire and failed to observe T.J. as she entered the court-

2. *See Coates v. Commonwealth,* Ky., 469 S.W.2d 346, 348–9 (1971).

room, the two hours that T.J. testified with her profile exposed to the jury offered ample opportunities to observe the witness's condition.

Apparently, the majority believes that T.J.'s pregnancy was not introduced into evidence because no attorney ever asked her during her testimony whether she was pregnant. A witness's testimony is not confined to the words he or she speaks [3]— certainly not in an era of video records where the image and mannerisms of a witness are available for appellate review.[4] While the majority cites authority suggesting that matters observed by members of the jury during a "jury view" of the crime scene are not evidence,[5] the Commonwealth presented T.J.'s obvious pregnancy during T.J.'s sworn testimony inside the courtroom. Although, without citation, the majority urges a narrow reading of our prior cases, this Court has emphasized countless times that trial courts and juries

are in a prime position to assess a witness's credibility because they can physically observe that witness's demeanor *as well as the witness's appearance.*[6] In a very real sense, thus, a testifying witness puts him or her*self* into evidence. As T.J.'s pregnancy was an identifiable characteristic of a testifying witness—just as her hair or eye color, her height or weight, her clothing, or any other physical characteristic would be—it was "in evidence" and trial counsel should have been allowed to argue reasonable inferences from this fact.

Nevertheless, I agree with the majority that no reversible error resulted from the trial court's rulings. Although I believe defense counsel properly addressed testimony which the Commonwealth could have utilized during its closing argument, the Commonwealth's closing argument did not discuss this portion of Dr. Bright's testimony. As such, I believe defense counsel

---

**3.** *See Hawpe v. Commonwealth,* 234 Ky. 27, 27 S.W.2d 394, 395 (1930) ("[T]he written or printed page containing the statement of witnesses is a dim picture of the impression that was actually made by the witnesses appearing in court and testifying in the presence of the jury." *Id.*).

**4.** *See Barnett v. Commonwealth,* Ky., 403 S.W.2d 40, 45 (1966) ("[A] reasonable and effective right of appeal demands all things of importance in the course of the trial be kept within reach of a tangible and visible record that can be reviewed by the appellate court." *Id.*).

**5.** *See Id.* at 44:
At the conclusion of all the testimony the jurors were sent to the scene of the shooting for a view in the presence of the appellant, the trial judge, the sheriff, and some of the lawyers....
[T]he trial court may, in its discretion conduct the trial at the scene of the alleged crime. That may be so, but a *jury view* is not to be equated with the reception of evidence....
*Id.* (emphasis added).

**6.** *See, e.g., Hawpe v. Commonwealth, supra* note 3 at 395:

The evidence of the man of "hang-dog" expression and furtive eye whose shifting demeanor stamps him before the jury as a man of doubtful veracity, stands out as clearly on the printed page as the evidence of the frank, open man of character whose every word an action bespeak truth and candor. It is because of the opportunities of juries to *see the witnesses and observe their appearance* and conduct that this court is slow to reverse a case on the evidence. *Id.* (emphasis added); *Elmendorf v. Commonwealth,* 171 Ky. 410, 188 S.W. 483, 490 (1916) ("The witnesses were before the jury, and it had an opportunity to observe their manner, *appearance,* intelligence, and apparent truthfulness, which we have not." *Id.* (emphasis added)); *Sesmer v. Barton's Adm'x,* 248 Ky. 15, 57 S.W.2d 1020, 1022 (1933) ("A jury sees the witnesses and hears them testify, observes their demeanor on the witness stand and considers many things in the conduct of a witness which this court has no opportunity to consider." *Id.*); *Commonwealth v. Willis,* Ky., 716 S.W.2d 224, 228 (1986).

suffered no prejudice when the trial court prevented him from preempting an argument which the Commonwealth elected not to make and which was not a likely juror inference given the unequivocal nature of T.J.'s testimony. I believe Garrett suffered no prejudice and I find the error harmless.[7]

LAMBERT, C.J., and STUMBO, J., join this concurring opinion.