RENDERED: MARCH 17, 2016
TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000105-MR

DATE 4-7-16 _ _

STEPHEN BARTLEY                                                   APPELLANT

|       | ON APPEAL FROM McLEAN CIRCUIT COURT |
| :---- | :--- |
| V.    | HONORABLE BRIAN WIGGINS, JUDGE |
|       | NO. 14-CR-000016 |

COMMONWEALTH OF KENTUCKY                                          APPELLEE

## OPINION OF THE COURT BY JUSTICE KELLER

### AFFIRMING

A McLean County jury convicted Stephen Bartley of two counts of first-degree sodomy and two counts of first-degree sexual abuse. Pursuant to a post-verdict agreement between Bartley and the Commonwealth, the court sentenced Bartley to 25 years' imprisonment. On appeal, Bartley argues that the trial court erred when it: (1) denied his pre-trial motion to dismiss the indictment; (2) granted the Commonwealth's intra-trial motion to amend the indictment; (3) denied his motion for a mistrial; and (4) denied his motions for a directed verdict. Bartley also argues that he was substantially prejudiced by testimony about prior and uncharged bad acts and by testimony regarding the victim's behavior while in foster care. For the following reasons, we affirm.

# I. BACKGROUND.

Bartley and his first wife, Laura, had three children and what was described as a tumultuous marriage. Laura left the marriage when their children were younger than school age, and the couple engaged in a lengthy and acrimonious custody battle. At some point after the dissolution of his marriage to Laura, Bartley remarried. During the majority of the time period at issue, Bartley lived with his three children, his second wife, and her two children.[1]

Regina,[2] the Bartleys' middle child, alleged that Bartley began sexually abusing her when she was three or four years old, and that the abuse continued until she was nine or ten. At trial, Regina, who was then 14 years old, testified about the following four specific incidents. When she was three or four years old, Bartley came into her bedroom, woke her, and told her to go into his bedroom. Bartley then removed Regina's panties and his shorts and digitally and orally manipulated and penetrated her vagina. When she was five or six years old, Regina accompanied Bartley to the garage where she performed oral sex on him. Regina testified that, after he ejaculated, Bartley gave her apple juice to rinse out her mouth. When Regina was eight, Bartley came into her bedroom and rubbed her vagina with his hand. Finally, when she was nine or ten, Bartley asked Regina to go into the home office, where

---

[1] It is unclear from the record if one of the other two children was the biological child of Bartley and his second wife. However, the nature of that relationship is irrelevant to this appeal.

[2] Regina is a pseudonym employed in this opinion to protect the child's true identity.

2

they engaged in mutual masturbation. We note that Regina testified in some detail about each of these incidents, describing the type of clothing each was wearing during two of the incidents, whether it was night or day, and, in some instances, the weather. However, Regina could not provide any specific dates.

As a result of her parents' ongoing custody battle and accusations made during that litigation (none of which involved sexual abuse), Regina had frequent, if not continuous, contact with social workers and therapists from the Department of Family and Juvenile Services. Despite these contacts, as well as contact with teachers, school counselors, medical care providers, and family members, Regina testified on direct examination that she did not report Bartley's abuse to anyone in authority until March 2013. Regina explained that she delayed making a report because she was afraid of Bartley and did not want to bring attention to herself or suffer recrimination because she had not stopped Bartley. On cross-examination, Regina testified that she had forgotten that, sometime before March 2013, she had reported the abuse to her mother while they were in the midst of an argument. However, according to Regina, her mother did not believe any abuse had occurred.

Bartley testified that he loved Regina and that he had not abused her. He could not explain why Regina was making false accusations and questioned her credibility because of her failure to report the abuse despite frequent opportunities to do so. He also noted that Regina did not make her accusations until after she had been charged with criminally assaulting her

3

mother. Bartley also testified that, because of the ongoing custody battle with his ex-wife, he tried not to be alone with any of his children.

Based on the preceding, and additional testimony that we set forth below, the jury convicted Bartley of all charges.

## II. STANDARD OF REVIEW.

The issues raised by Bartley have different standards of review. Therefore, we set forth the appropriate standard of review as we address each issue.

## III. ANALYSIS.

### A. The Trial Court Did Not Err When It Denied Bartley's Motion to Dismiss the Indictment.

On January 13, 2014, the grand jury returned an indictment charging, in pertinent part,[3] that Bartley committed two counts of "sodomy in the first-degree when he engaged in deviate sexual intercourse with [Regina], a female less than twelve (12) years of age" and two counts of "sex abuse in the first-degree when he subjected a female child, [Regina], to sexual contact who was less than twelve (12) years of age" between "2004 and March, 2012, in McLean County, Kentucky." On March 24, 2014, Bartley's counsel filed a motion for a bill of particulars seeking additional information. At the hearing on that motion the Commonwealth indicated that it had provided a copy of a recorded interview of Regina to Bartley's counsel and that additional details were

---

[3] The indictment also charged Bartley with two counts of first-degree rape. However, the Commonwealth dismissed those counts because the alleged offenses occurred outside of McLean County.

4

contained in that interview. When Bartley's counsel indicated he was having difficulty hearing the copy of the tape that he had, the Commonwealth agreed to provide him with another copy. Bartley's counsel then stated that if he needed any additional information after listening to the tape, he would advise the court and the Commonwealth accordingly.

On August 11, 2014, Bartley notified the court that he had retained new counsel. On October 31, 2014, the Commonwealth sent correspondence to Bartley's new counsel advising him of additional facts regarding each of the counts in the indictment. The additional facts were consistent with Regina's ultimate testimony, except for the age range when the incident in the garage occurred.

On the morning of trial, Bartley moved to dismiss all of the counts of the indictment due to lack of specificity. In particular, he noted that the offenses occurred within a range of seven years and, without more specific dates, he could not mount an adequate defense. The Commonwealth admitted that it was difficult to get specific dates, noting that Regina was between three or four and ten or eleven years old when the events took place. However, the Commonwealth advised the court that it had tried to be as specific as possible in its October 31, 2014 disclosure letter to Bartley. The Commonwealth also noted that it had provided an audio tape to Bartley several months earlier. Bartley again complained that he was unable to hear what Regina said on the tape; however, it does not appear that he had mentioned this to either the court or the Commonwealth in the months after he received the second copy of

the tape. The court noted that Bartley had a second copy of the tape for some time and had not complained about that tape earlier. Therefore, the court held that the tape was not an issue. The court then agreed with Bartley that the indictment was not specific and asked the Commonwealth if it wanted to move to amend it to conform with the anticipated testimony. The Commonwealth stated that it would wait to see what transpired at trial. The court then noted that the last count was the least specific and could be a problem; however, it denied Bartley's motion.

During trial Bartley again moved to dismiss the indictment and he sought a new trial based, in part, on the alleged defects in the indictment. The court overruled those motions.

Bartley continues to argue on appeal that the indictment was inadequate because it gave him "no notice whatsoever of the dates he was alleged to have committed the offenses." The Commonwealth argues that the indictment, as supplemented by the Commonwealth's provision of the audio tape and the October 31, 2014 letter, was sufficient.

> [An] indictment or information shall contain, and shall be sufficient if it contains, a plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged. It need not contain any other matter not necessary to such statement, nor need it negative any exception, excuse or proviso contained in any statute creating or defining the offense charged.

Kentucky Rule of Criminal Procedure (RCr) 6.10(2).

> The sufficiency of an indictment is measured by two criteria under the Due Process Clause: first, it must "sufficiently apprise a defendant of the criminal conduct for which he is called to answer;" second, the indictment and instructions together must

6

provide adequate specificity so as to allow the defendant to "plead acquittal or conviction as a defense" against future indictment and punishment for the same offense.

*Alford v. Commonwealth,* 338 S.W.3d 240, 248 (Ky. 2011) (citations omitted).

The indictment herein was bare bones, containing only the specific crimes charged and the range of dates within which the offenses occurred. However, the Commonwealth supplemented the indictment with the recording of Regina's statement and the October 31, 2014 letter to Bartley's counsel. For counts one, two, and three the October 31, 2014 letter provided details regarding the locations where each offense occurred, a narrower time-frame for when each offense occurred, and what specific activities took place. Furthermore, for counts one and two the Commonwealth provided information regarding what clothes Regina and Bartley were wearing. For count four, the correspondence provided details regarding where the offense occurred and what activities took place; however, the Commonwealth did not provide a more specific time frame. These details were sufficient to apprise Bartley of the offenses with which he was charged and to permit him to plead prior conviction should he be charged with the same offense in the future. Therefore, the trial court did not err when it refused to dismiss the indictment.

**B.      The Trial Court Did Not Err When It Granted the Commonwealth's Motion to Amend the Indictment.**

> The court may permit an indictment, information, complaint or citation to be amended any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. If justice requires, however, the court shall grant the defendant a continuance when such an amendment is permitted.

7

RCr 6.16. Because RCr 6.16 is permissive, we review a trial court's order permitting the Commonwealth to amend the indictment for abuse of discretion. *See Riley v. Commonwealth*, 120 S.W.3d 622, 631-32 (Ky. 2003).

As noted above, the parties recognized before trial that the indictment lacked specificity. In order to address this deficiency in the indictment, the Commonwealth provided Bartley with two copies of Regina's taped statement and correspondence setting forth details regarding each of the charges. When asked by the court the morning of trial if it wanted to amend the indictment to conform with that correspondence, the Commonwealth stated that it would wait until testimony had been presented. It appears that the Commonwealth believed that the testimony might differ somewhat from what was in the correspondence, a belief that proved to be true with regard to how old Regina was when one of the charged acts occurred. Therefore, the Commonwealth did not move to amend the indictment until after the close of all evidence, when it submitted draft jury instructions.[4]

Initially, we note that Bartley does not argue that the amendment resulted in different or additional charges being levied. Therefore, we do not address that part of RCr 6.16.

Bartley does argue that the amendment prejudiced his "right[s] to present a defense and . . . to confront the witnesses against him through

---

[4] We note that the instructions submitted by the Commonwealth were consistent with Regina's testimony and the amended indictment. Although unanimity was not raised as an issue, the instructions in this case exemplify how to word instructions to avoid unanimity issues.

8

effective cross examination." In support of this argument, Bartley states that the amendment made it impossible to develop an alibi defense. However, Bartley was aware of the charges against him and the general time frame when the charged incidents occurred, and the Commonwealth took steps to advise him more specifically what the charges entailed. Therefore, we discern no prejudice to any of Bartley's substantial rights by amendment of the indictment to conform with the evidence.

## C. The Trial Court Did Not Err When It Denied Bartley's Motion for a Mistrial and Evidence of Uncharged Crimes and Other Bad Acts Does Not Warrant Reversal.

Bartley complains that Regina's testimony about uncharged sexual acts, other acts of physical abuse, and possible illegal drug use impermissibly prejudiced him. He admits that he did not properly preserve the majority of these alleged errors, which we address separately below.

### 1. Uncharged Sexual Acts Testimony on Direct Examination.

During direct examination, the Commonwealth asked Regina if anything had ever happened between her and Bartley in her bedroom. She said that it had and, when the Commonwealth asked her to describe what happened in detail, she said that Bartley lay in bed with her, put his hand down her panties, and rubbed her vagina. Regina stated that she was not sure how old she was when this happened, but she believed she may have been eight. During this portion of her testimony, Regina stated twice that Bartley did this more than once, and Bartley did not object. Thus, Bartley did not properly preserve any issues with regard to this testimony, and we examine its

9

admission for palpable error. RCr 10.26. To be palpable, an error must be "so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Baumia v. Commonwealth*, 402 S.W.3d 530, 542 (Ky. 2013).

Regina's "testimony falls within the exceptions for evidence offered to prove intent, plan, or absence of mistake or accident . . . . [and] evidence of similar acts perpetrated against the same victim are almost always admissible for those reasons." *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky. 2002); *Harp v. Commonwealth*, 266 S.W.3d 813, 822 (Ky. 2008). Thus, Regina's short statements about uncharged sexual acts, made essentially in passing during her testimony on direct examination, did not rise to the level of palpable error.

### 2. Uncharged Sexual Acts Testimony on Cross-Examination.

On cross-examination, Bartley questioned Regina about the preceding incident and Regina stated that she was seven or eight years old but that it happened all the time. At that point Bartley's counsel asked to approach the bench, objected, and made a motion for a mistrial arguing that Regina had testified several times about uncharged acts. Thus, Bartley properly preserved issues with regard to Regina's third statement about uncharged sexual acts.

In response to Bartley's objection and motion, the Commonwealth noted it had not solicited Regina's first two statements about uncharged sexual acts and that Bartley had not objected. The court noted that Regina's testimony about uncharged sexual acts was not proper; however, it also noted that Bartley's objection was not timely and that Regina's testimony was not grounds

10

for a mistrial. The court then admonished the Commonwealth to tell Regina to refrain from making any similar statements, which Regina did.

The extraordinary relief of a mistrial will not be granted absent "a manifest necessity." *Maxie v. Commonwealth*, 82 S.W.3d 860, 863 (Ky. 2002). A party claiming that the trial court erroneously denied a motion for a mistrial must show that any "prejudicial effect could be removed in no other way." *Id.* We review a trial court's decision to declare or deny a mistrial for abuse of discretion. *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004). We discern no abuse of discretion here.

Regina's testimony on cross-examination about uncharged sexual acts was, like her testimony on direct, spontaneous and not in direct response to questioning. Bartley did timely object to this testimony; however, by the time he did so, the jury had already heard the complained of testimony twice, and Bartley had already suffered any prejudice he was going to suffer. Therefore, Regina's testimony during cross-examination was harmless error. Furthermore, Bartley, who did not ask the court to admonish the jury, has not shown how an admonition would not have removed any prejudicial effect from Regina's cross-examination testimony. Therefore, the trial court did not abuse its discretion when it denied Bartley's motion for a mistrial.

### 3. *Physical Abuse.*

Bartley's defense was that Regina was fabricating her allegations of abuse. In support of that defense, Bartley noted during his opening statement that, despite being involved with social workers, teachers, and counselors for

11

years, Regina did not disclose the abuse until she was facing criminal charges.[5] To refute that portion of Bartley's defense, the Commonwealth asked Regina if Bartley had ever told her not to tell anyone about the sexual abuse. Regina said, "Once I knew, like he said that if I did tell somebody, I probably wouldn't be here." She also stated that she had not told anyone because Bartley had hit her, her siblings and step siblings; that he scared her and the other children; and that he had nearly beaten her brother to death.

On cross-examination, Bartley asked Regina about what she had told her teachers. She testified that she had not told them about any sexual abuse but that she had told them Bartley had hit her because she had "bruises and marks." Bartley did not object to any of Regina's testimony about physical abuse. Because Bartley did not object, we review the admission of this evidence for palpable error. RCr 10.26.

Bartley argues that evidence of his physical abuse was not admissible because it was not probative of whether the sexual abuse and sodomy occurred. According to Bartley, the Commonwealth only introduced this evidence to "tip the scales in [Regina's] favor." Setting aside the fact that nearly all evidence is introduced in order to tip the scales in favor of the party offering it, we discern no error, let alone palpable error.

Bartley is correct that evidence of his physical abuse of Regina and other members of his family would generally be inadmissible if offered only to prove

_____

[5] It appears from the record that the criminal charges related to a physical altercation between Regina and her mother.

12

his bad character or criminal predisposition. *See Alford v. Commonwealth*, 338 S.W.3d 240, 250 (Ky. 2011). Such evidence "is admissible only if probative of an issue independent of character or criminal predisposition, and only if its probative value on that issue outweighs the unfair prejudice with respect to character." *Billings v. Commonwealth*, 843 S.W.2d 890, 892 (Ky. 1992).

Bartley specifically raised as an issue Regina's failure to tell anyone about the sexual abuse and sodomy. Evidence of his physical abuse was relevant and admissible to explain why Regina waited several years to tell anyone, an issue independent of character and criminal predisposition. Therefore, we discern no error in the admission of evidence of Bartley's physical abuse.

### 4. Drug Use.

When the Commonwealth questioned Regina about the incident in the office, she testified that Bartley called her into the house and asked her to get something from the office. She could not remember what Bartley wanted her to get but thought it might have been "pain pills." Bartley did not object. He now argues that this testimony was impermissible evidence of bad acts, presumably because the testimony implied that the "pain pills" were illegal. We disagree.

Because Bartley did not object, we must determine whether the admission of this evidence, if error, rose to the level of palpable error. RCr 10.26. Regina did not characterize the pills Bartley wanted her to get as being illegal substances. She merely stated that he wanted her to get pain pills, which could include both legally and illegally obtained substances. Thus, even

13

if this testimony was erroneously admitted, its admission did not threaten "the integrity of the judicial process," *Baumia*, 402 S.W.3d at 542, and was not palpable error.

## D. The Court Did Not Err When It Permitted Habit Testimony.

During its case in chief, the Commonwealth called Keith Stratton, Regina's foster father. Stratton testified that Regina was apprehensive when she first came to live with his family, fearing that someone might try to get her. When the Commonwealth asked Stratton if he knew who Regina feared, he stated that Regina never told him but that she had discussed it with his wife. Bartley, without explanation, objected and the Commonwealth abandoned this line of questioning. The Commonwealth then asked Stratton whether, "[c]omparing [Regina] to all the other children that you've had placed in your home, how would you, with her apprehension, to use your word, how would you describe [Regina], compare her?" Stratton responded that most foster children are apprehensive but that Regina "was the most apprehensive child that I've had to this point."

Bartley argues that this testimony was impermissible "flip habit evidence" that Regina acted differently from other foster children because she had been sexually abused by Bartley. According to Bartley, permitting such testimony, "remove[ed] the jury from its historic function of assessing credibility." *Newkirk v. Commonwealth*, 937 S.W.2d 690, 696 (Ky. 1996). Because Bartley did not raise this issue before the trial court, it is unpreserved, and we review it for palpable error. RCr 10.26.

14

In support of his argument, Bartley cites *Sanderson v. Commonwealth*, 291 S.W.3d 610 (Ky. 2005) which sets forth the general rule against Child Sexual Abuse Accommodation Syndrome (CSAAS) testimony:

> [A] party cannot introduce evidence of the habit of a class of individuals either to prove that another member of the class acted the same way under similar circumstances or to prove that the person was a member of that class *because* he/she acted the same way under similar circumstances.

*Id.* at 613 (emphasis in original) (citing *Kurtz v. Commonwealth*, 172 S.W.3d 409, 414 (Ky. 2005)).

We are not convinced that Stratton's testimony reached the level of CSAAS testimony, nor are we convinced that its admission constituted manifest injustice. This Court found reversible error in *Sanderson* where a clinical psychologist testified that a child's addition of new allegations of sexual abuse was normal and in *Newkirk* where a psychiatrist testified that recantation was a common occurrence among sexually abused children. Both cases involved testimony by medical professionals offered to prove sexual abuse had occurred because the children acted like other sexually abused children. As the Court noted in *Newkirk*, such testimony does not account for the possibility that "other children who had not been similarly abused might also develop the same symptoms or traits." *Id.* at 690-91 (citing *Lantrip v. Commonwealth*, 713 S.W.2d 816, 817 (Ky. 1986)).

Stratton's testimony poses no such problem for seven reasons. First, Stratton was not a medical professional, and his testimony did not carry the weight assigned to such professionals. Second, Stratton was not comparing

15

Regina to other sexually abused children; he was comparing her to other foster children. Third, Stratton did not state that Regina was apprehensive because she had been sexually abused or even state that sexually abused children act apprehensively. Fourth, the jury had heard testimony that Bartley and Regina's mother had been engaged in a lengthy and acrimonious divorce and custody battle. Fifth, Regina had been treated medically and psychologically on an ongoing basis for issues related to that custody battle. Sixth, Regina had been arrested and charged with assaulting her mother. Seventh, Regina, who had been released from juvenile detention before being placed with the Strattons, stated that facility was "the worst place ever, except for having to live" with her mother.

Certainly, the jury could have inferred that Regina's apprehension was the result of Bartley's sexual abuse; however, it could have as easily inferred that her apprehension was the result of her parents' ongoing legal battle, her own psychological and legal difficulties, and her fear of being returned to her mother's care or to juvenile detention. Therefore, we cannot say that Stratton's testimony resulted in manifest injustice or that it rose to the level of palpable error.

**E.    Bartley Was Not Entitled to a Directed Verdict.**

> On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such

16

testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham,* 816 S.W.2d 186 at 187 (Ky. 1991).

Bartley argues that the trial court should have granted his motions for directed verdict because Regina's testimony was "uncorroborated and inherently improbable." In support of his argument, Bartley cites *Garrett v. Commonwealth,* 48 S.W.3d 6, 10 (Ky. 2001). In *Garrett,* the victim testified that her father began sexually abusing her at the age of six and continued abusing her for six years. *Id.* at 8. The victim's testimony was partially corroborated by her mother, a friend, and a neighbor who observed Garrett acting in a compromising way toward the victim. *Id.* at 8-9. This Court noted that the victim's testimony "occasionally contradicted her previous statements to the police" and that the trial court, based on those contradictions, granted Garrett's motion for directed verdict as to several of the charges. *Id.* at 10. However, the trial court did not direct a verdict on all of the charges, and this Court affirmed the trial court's determinations. *Id.* In doing so, this Court stated that "[c]orroboration in a child sexual abuse case is required only if the unsupported testimony of the victim is '. . . contradictory, incredible or inherently improbable.'" *Id.* (Citations omitted.)

17

Bartley argues that this was a classic case of "he said/she said," with Regina testifying that Bartley abused her, with no corroborating evidence,[6] and Bartley testifying that no abuse occurred. Bartley notes that Regina testified on direct examination that she had not told anyone of the ongoing abuse, but testified on cross-examination that she had told her mother about the abuse during the course of an argument. Bartley argues that this inconsistent testimony, coupled with the fact that no one witnessed any sexual abuse during a time when Regina and the family were "under a microscope due to the divorce and custody battle" rendered her testimony incredible and inherently improbable. We disagree.

It is fair to characterize Regina's testimony about when she disclosed the abuse as inconsistent, and Bartley was free to attack her credibility based on that testimony. However, Regina's testimony about the specific acts of abuse was not inconsistent. It contained detailed descriptions of what occurred, where each incident occurred, and, for two of the incidents, what she and Bartley were wearing. This evidence was as specific as, if not more specific than, evidence in other similar cases, and any inconsistency about when Regina disclosed the abuse was not so severe as to render the remainder of her testimony inherently improbable.

Furthermore, even with this partial inconsistency, the evidence, taken in the light most favorable to the Commonwealth, was more than sufficient to

---

[6] We note but will not further comment on the inconsistency of Bartley's arguments that Stratton's testimony impermissibly bolstered Regina's testimony while simultaneously arguing that there was no corroborating evidence.

support the trial court's finding that a reasonable jury could reasonably conclude that Bartley committed the charged offenses. Therefore, we discern no error in the trial court's denial of Bartley's motions for directed verdict.

## IV. CONCLUSION.

For the foregoing reasons, we affirm.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Emily Holt Rhorer
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Julie Scott Jernigan
Assistant Attorney General