# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# Supreme Court of Kentucky

### 2005-SC-000869-MR

FINAL

DATE 8-23-07 _____ P.C.

VINCENT RAY GIANCOLA                                              APPELLANT

V.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BARRY WILLETT, JUDGE
NOS. 02-CR-01992 AND 04-CR-03214

COMMONWEALTH OF KENTUCKY                                          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## VACATING AND REMANDING

Vincent Ray Giancola (hereinafter appellant) appeals his conviction in the Jefferson Circuit Court for five counts of sodomy in the second degree, two counts of rape in the second degree and one count of sexual abuse in the second degree. Giancola alleges that he did not get a fair trial because he had relevant evidence to introduce which was excluded incorrectly by KRE 412, the "rape shield" rule. He additionally argues that improper hearsay evidence was admitted at trial by way of physicians' testimony and reports. He further contends that this case should have been severed into separate trials because the offenses as to the two victims were unrelated.

Having reviewed the arguments and the record, we conclude the "rape shield" evidence was properly excluded, but we agree with appellant that separate trials were required and that hearsay was improperly admitted. As a result, we vacate the

convictions and remand for further proceedings consistent with this opinion.

The factual allegations which emerged at trial were as follows: K.P. and A.W. were former best friends who used to spend a lot of time together, and spent the night at each other's homes. On the night of August 2, 2002, the two thirteen year olds were staying overnight at the house of A.W.'s uncle and aunt. Also living in the home and present that night was appellant, A.W.'s cousin, who was then nineteen years of age. The girls were to sleep in the basement, and they stayed up late watching TV. Appellant's bedroom was also in the basement. A.W. went into appellant's room for a while and talked to him. After A.W. fell asleep on a mattress on the floor, appellant came out of his bedroom and into the room where K.P. was watching TV. According to K.P., appellant tried to kiss her and she told him no. Appellant went back to his bedroom.

K.P. testified that about 45 minutes later appellant came back out and turned off the television. He got on top of K.P. and put his knees on top of her legs. He held her arms down while he kissed her on the neck. K.P. told him to stop, and that she was only thirteen. K.P. reported that appellant responded, "Age don't matter." She stated that appellant put his hand down her pajama pants and his fingers in her vagina while she continued to tell him to stop. He got on his knees on top of her and took out his penis and told K.P. to suck it. When she said no, he put it in her mouth. After that, he pulled down her pants and began to lick her vagina, but according to K.P. she moved around in an effort to get appellant to quit. He then pulled her pants down further and inserted his penis into her vagina. K.P. stated she moved even more and made noise in an attempt to make appellant stop. He did, and got up and returned to his bedroom.

A.W. did not wake up or see anything occur between K.P. and appellant. K.P.

testified that she went to the bathroom and wiped her genital area, and there was a small amount of blood on the tissue. After K.P. revealed to a friend and her mother what appellant did to her that night, her mother took her to the emergency room and K.P. was examined and interviewed by a child services agency.

After K.P. made her allegations, an investigation ensued in which it emerged that A.W. had had a sexual relationship with appellant. At trial, A.W. testified that the sexual relationship with appellant took place in the weeks or months before the occurrence between appellant and K.P. A.W. testified that appellant knew her age at the time. She stated that appellant would wake her up and touch her in her private areas. She stated that they had intercourse, oral sex and anal sex. She stated that these acts occurred on the couch in the basement of appellant's house.

The allegations against appellant regarding K.P. and A.W. were tried together from April 12 through April 19, 2005. As to K.P., appellant was found not guilty of rape in the first degree, but guilty of rape in the second degree; not guilty of two counts of sodomy in the first degree, but guilty of two counts of sodomy in the second degree; and not guilty of sexual abuse in the first degree. With regard to A.W., the jury found appellant guilty of three counts of sodomy in the second degree, one count of rape in the second degree and one count of sexual abuse in the second degree.

I. Motion for Separate Trials

Because we reverse on this question, we first discuss the request for separate trials. Appellant argued that the allegations should have been heard in separate trials as to K.P. and A.W. because of the inherent prejudice in the jury's consideration of all of the allegations together.

RCr 9.12 provides that the court may order two (2) or more indictments,

- 3 -

informations, complaints or uniform citations to be tried together if the offenses, and the defendants, if more than one (1), could have been joined in a single indictment, information, complaint or uniform citation. Offenses may be charged in the same indictment "if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." RCr 6.18. RCr 9.16 provides that if it appears that a defendant or the Commonwealth is or will be prejudiced by joinder for trial, the court shall order separate trials of counts, or provide whatever other relief justice requires.

To constitute reversible error on the issue of improper joinder, there must be a showing of a clear abuse of discretion and a showing of prejudice. Rearick v. Commonwealth, 858 S.W.2d 185, 187 (Ky. 1993). A significant factor in identifying whether joinder for trial is prejudicial is the extent to which evidence of one offense would be admissible in a trial of the other offense. Spencer v. Commonwealth, 554 S.W.2d 355, 357 (Ky. 1977). That is, if the evidence of one of the offenses would be admissible in a separate trial of the other offense, the joinder in most instances will not be prejudicial. Id.

As to whether combined trials were error, appellant asserts that the offenses involved separate victims and occurred on separate dates. He notes the victims' allegations were made at different times and the allegations did not coincide. As to A.W., the charge was statutory rape because A.W. participated in the described acts without force or threat of force. However, as to K.P., the charge was that appellant committed rape by forcible compulsion. Appellant additionally noted in his motion to sever that many of the lay witnesses did not overlap, that disclosure was made to different individuals, different doctors examined the girls, and the medical evidence

varied for each of the girls. Appellant concludes the evidence in these offenses would not be admissible in separate trials.

We scrutinized the issue of joinder of sexual crimes in Rearick, and therein observed that "multiple acts involving sexual crimes are not necessarily similar." 858 S.W.2d at 187. In that case, we looked to see whether the evidence would have been admissible as evidence of a common scheme or plan. Id. at 187-188. We established that evidence of other acts of sexual deviance offered to prove a common scheme or plan must be so similar to the crime on trial that it constitutes a "signature crime." Id. at 187. This standard would square with our previously established rule that evidence of sexual misconduct is not admissible if it tends only to prove a "lustful inclination." Pendleton v. Commonwealth, 685 S.W.2d 549, 552 (Ky. 1985); see also Dickerson v. Commonwealth, 174 S.W.3d 451, 469 (Ky. 2005). The details of the charged acts should be so similar as to constitute a modus operandi. Dickerson, 174 S.W.3d at 469.

The facts of the charged offenses in the case at bar do not display a common scheme that establishes a modus operandi. The only similarities are the ages of the girls and the site of the crime. In all other respects, these offenses were very different. We have said that evidence constituting a pattern of behavior to be admissible as such should be "strikingly similar." Violett v. Commonwealth, 907 S.W.2d 773 (Ky. 1995). Considering the forcible nature of the offense described by K.P., the offenses in this case were not strikingly similar.

Furthermore, the evidence against appellant as to one of the girls would not have been admissible in a separate trial of the charges against appellant as to the other girl. Although all charges were of sexual offenses, the acts were not of similar character and the offenses were not connected. The evidence did not constitute common scheme or

plan evidence, and identity was not at issue in the case. KRE 404(b)(1). Additionally, there was no evidence relating to the charges against appellant as to A.W. that was intertwined with or necessary to prove any of the charges against appellant as to K.P. KRE 404(b)(2).

Moreover, we agree that there was prejudice. "[E]ach additional unrelated charge took on a weight by virtue of being joined with the others whereby the whole exceeded the sum of its parts." Rearick, 858 S.W.2d at 188. Accordingly, we believe that with joinder, once the jury found guilt as to one incident, it greatly enhanced the likelihood that they would find guilt as to the second victim because of the collective proof and the prejudice of being charged with multiple sexual offenses.

We conclude that it was error to deny the motion to sever the charges for trial. Thus, we vacate the convictions and remand for separate trials.

## II. Rape Shield Evidence

Next, appellant argues that the trial court erred in excluding from trial, pursuant to KRE 412, evidence regarding the victims that was necessary for his defense. KRE 412 provides that evidence that the victim engaged in other sexual behavior is not admissible in a criminal or civil proceeding involving alleged sexual misconduct except as allowed in that Rule. The exceptions under this "rape shield" rule in a criminal case are listed in KRE 412(b)(1):

> (1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:
>
> (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;
>
> (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct

- 6 -

offered by the accused to prove consent or by the prosecution; and

(C) any other evidence directly pertaining to the offense charged.

The exceptions in the Rule pertain to "legitimate, if not compelling, needs for defense evidence." Robert Lawson, The Kentucky Evidence Law Handbook, § 2.30[4][a], p. 162 (4th ed. 2003). The stated purpose for the existence of the rape shield rule is "to protect alleged victims of sex crimes against unfair and unwarranted assaults on character." Id., § 2.30[3], p. 161, quoting Evidence Rules Study Committee, Kentucky Rules of Evidence – Final Draft, p. 36 (Nov. 1989). "[T]he KRE 412 balancing test contains 'an obvious tilt toward exclusion over admission.'" Commonwealth v. Dunn, 899 S.W.2d 492, 494 (Ky. 1995)(citing Lawson, The Kentucky Evidence Law Handbook, § 2.30 (3d ed. 1993)).

## A. Statement by K.P.

The first item of evidence appellant argues was improperly excluded was a statement allegedly made by K.P. on the day of the alleged offenses. When the court excluded the evidence, appellant presented an avowal of the disputed testimony. The avowal consisted of testimony from A.W. that before they went to the Giancola house K.P. had told her that she thought she was pregnant. A.W. testified that the statement did not shock her because K.P. lied a lot. When K.P. was questioned about the statement on avowal, she testified that she did not remember saying that.

Appellant argues that this evidence was admissible under KRE 412(b)(1)(A) as evidence of a specific instance of sexual behavior for the purpose of proving that some person other than him was the source of physical injury to K.P. There was evidence of physical injury to K.P. introduced at trial by the testimony of Dr. Betty Spivack, a forensic pediatrician who had conducted a physical examination of K.P. on August 23,

- 7 -

2002. At trial, Dr. Spivack presented a photograph she took of the inner surface of K.P.'s genital tract. She showed the jury that the hymen had a "v-shaped notch" with an irregular surface, as compared to the smooth surface otherwise found on it. Dr. Spivack testified that this was a healing, not fresh, interruption in the continuity of the hymen, which indicated that the outer surface had been breached, and now was in a healing phase. The Commonwealth asked Dr. Spivack if it was consistent with the history K.P. provided. She responded that it was consistent with the history of very brief bleeding after a sexual event. She also testified that she would describe the existence of the lesion as "suspicious but not diagnostic" and nonetheless consistent with the history and consistent with very brief bleeding.

At the time of the examination, K.P. told Dr. Spivack that she had never had intercourse with anyone prior to the incident with appellant.[1] K.P. also stated to Valleri Mason, her forensic interviewer at Children First[2] that she had never had sex prior to the incident with appellant. Appellant alleges the statement that she thought she was pregnant demonstrated that K.P. had sex previously and that some other person could have been the source of the physical injury to K.P.

The Commonwealth insists that the claim that K.P. said she thought she was pregnant was properly excluded under KRE 412 and KRE 403. Moreover, the Commonwealth argues the statement was hearsay which did not fit within any exceptions to the hearsay rule. Because there was no evidence at trial from K.P. regarding her prior sexual history, the Commonwealth argues it did not qualify as a prior

---

[1] Dr. Spivack did not testify to this at trial.

[2] At trial, it was explained that Children First is a third party agency that performs interviews and medical examinations of alleged sexual abuse victims for the Louisville Metro Police Department.

inconsistent statement.  Furthermore, the Commonwealth notes that the avowal only consisted of the introduction of the statement, but did not go into whether K.P. had sexual intercourse prior to the offense.  The Commonwealth also suggests the statement allegedly made by K.P. was not necessarily made in earnest.

We concur with the Commonwealth's assertion in the trial court that this evidence simply was not sufficiently probative to be admitted into evidence under KRE 412(b)(1)(A).  KRE 412(b)(1)(A) permits an exception for *specific instances* of sexual behavior that would tend to establish that another person could be the source of injury. The statement provides no direct evidence that K.P. had had sexual intercourse prior to August 2, 2006.  The defense was responsible for developing the avowal testimony, but did not elicit from K.P. on avowal any information as to the truth behind the statement she purportedly made.  However, when specifically asked by a doctor and child services worker, K.P. stated that she had not had sex before.

Moreover, the doctor's testimony was relatively specific as to the time frame in which the injury must have been incurred.  The Commonwealth Attorney asked about the time frame provided in the history.  Dr. Spivack responded that she saw K.P. about 3 ½ to 4 weeks after the described event.  She was able to say that it certainly was not an event that had happened a day or two before since there was no active bruising or bleeding.  She testified that, since it was a virtually completely healed lesion, in her experience it was consistent with an injury of that age.

There is no specific information, on the other hand, as to time in the avowal.  For a KRE 412(b)(1)(A) exception, the evidence refuting the source of injury must correspond to an identified time period.  With the lack of time specificity, this statement does not tend to prove that anyone else was the source of injury.  Thus, the evidence

-9-

did not suffice to establish any factual issue and was properly excluded under the standard in KRE 412.

B. Impeachment of A.W. with evidence of other sexual relationships.

The remaining instances of "rape shield" testimony related to the charges involving A.W. The first concerns the question of whether A.W. had prior consensual sexual relationships. During a forensic interview conducted by Valleri Mason at Children First, A.W. stated that she had previously had consensual sex with two other males, ages fourteen and sixteen, when she was twelve years old. However, in her



she had only had a single sexual partner, aged nineteen (the age of appellant at the time of the alleged offenses). Appellant argues that he should have been able to show the conflict in A.W.'s statements as impeachment evidence.

Since the evidence did not fit within either exception KRE 412 (b)(1)(A) or KRE 412 (b)(2)(B), it would have to be admissible under KRE 412 (b)(1)(C), as evidence directly pertaining to the offense charged. Yet this is not evidence which directly pertains to the charges involving appellant and A.W., and so KRE 412 does not permit it. The evidence related to other persons, not appellant, and did not tend to prove whether A.W.'s claims against appellant were true. Thus, we consider this to be just

Amendment right to a fair trial may require permitting the defendant to inquire into whether a child of tender years had obtained her knowledge of sexual matters from some source other than the defendant. State v. Budis, 125 N.J. 519, 593 A.2d 784 (N.J. 1991) (nine year old); Commonwealth v. Ruffen, 399 Mass. 811, 507 N.E.2d 684 (Mass. 1987) (ten year old victim); State v. Baker, 508 A.2d 1059 (N.H. 1986) (thirteen year old).

We agree with the Commonwealth, however, that at the time of the offenses, A.W. was not so young that a jury would assume she could not have had any knowledge of sexual matters unless the allegations against appellant were true. In this case, the victims were teenagers and, in our society, likely to have had some exposure to sexual information from parents, school,[3] peers, or the media. In general, courts have allowed evidence of other sexual experiences of the victim when the child is younger than thirteen years of age. Christopher B. Reid, Note, The Sexual Innocence Inference Theory as a Basis for the Admissibility of a Child Molestation Victim's Prior Sexual Conduct, 91 Mich.L.Rev. 827, 852 (1993). See also, Consent, Credibility, and the Constitution: Evidence Relating to a Sex Offense Complainant's Past Sexual Behavior, 44 Cath. U. L. Rev. 709, 807-808 (1995). We incidentally note the Commonwealth never argued at trial that appellant was the only possible source of the victims' sexual knowledge. We are not persuaded that appellant showed a need to use this evidence despite the rape shield prohibition because we think the jury was unlikely to draw the inference in this case.

---

[3] The Commonwealth notes on appeal that the state Board of Education has established courses of study for schools, including, for the victims' grade level, reproductive health. However, there is nothing in the record to show that either of the victims was enrolled in such courses, so we decline to infer that these girls were educated in such classes.

Appellant makes an additional argument that the evidence was relevant and necessary to impeach A.W.'s credibility, and any limitation on his right to cross-examine her about such matters violated his right to a fair trial. However, the right to cross-examination is not absolute and the trial court retains the discretion to set limitations on the scope and subject of it. Davenport v. Commonwealth, 177 S.W.3d 763, 767-768 (Ky. 2005). In Davis v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974), the Supreme Court noted that the exercise of the right of confrontation is not unlimited, but rather, the right to cross-examine an adverse witness is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation." Trial judges retain wide latitude to impose reasonable limits on cross-examination, such as to avoid harassment and prejudice, confusion of the issues, repetition and marginal relevance. Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct.1431, 89 L. Ed. 2d 674, 683 (1986).

We conclude that this evidence was not relevant under KRE 401, and was not necessary to impeach. It was properly excluded as evidence with the potential to embarrass the witness, invade her privacy, confuse the jury and prejudice the Commonwealth's case. We further agree with the Commonwealth that whether A.W. had sex with others is also properly excluded by the court as impeachment on a collateral matter. Bratcher v. Commonwealth, 151 S.W.3d 332, 354 (Ky. 2004). As stated above, the victim's past sexual behavior does not directly pertain to the question of guilt or innocence. Appellant was not prevented from cross-examining A.W., but was prevented from introducing matters which would be potentially confusing to the jury and without probative value.

### C. Prior Abuse Charges by A.W.

The final piece of evidence excluded by the rape shield rule was the information that A.W. had previously made an allegation of sexual abuse against her mother's boyfriend. A Child Protective Services social worker found the allegations to be unsubstantiated. The Crimes Against Children Unit recommended the case be closed as unsubstantiated. The boyfriend, Jeff Kountz, was indicted after the charges in the case at bar came out, but the Commonwealth eventually dismissed the charges. Appellant argues that this evidence was admissible because his defense was that the charges were fabricated and the information had much more probative value than prejudice.[4]

This evidence differs from the other impeachment evidence appellant seeks, because a complainant's false allegation of sexual abuse or assault is arguably relevant to indicating the veracity of the charges leveled in a later case. A number of jurisdictions hold that evidence of false prior accusations is not barred by the rape shield prohibitions because such evidence does not pertain to "sexual behavior" under the rule designed to protect victims from disclosure of their sexual conduct. State v. Baker, 679 N.W.2d 7, 10 (Iowa 2004); State v. Walton, 715 N.E.2d 824, 826 n.6 (Ind. 1999); State v. Barber, 766 P.2d 1288 (Kan.App. 1989); People v. Mandel, 403 N.Y.S.2d 63, 61 A.D.2d 563 (1978); Redmond v. Kingston, 240 F.3d 590, 592 (7th Cir. 2001); State v. Smith, 743 So.2d 199, 202 (La. 1999).

In Hall v. Commonwealth, 956 S.W.2d 224, 227 (Ky. App. 1997), our Court of Appeals set forth a test for assessing when prior allegations of sexual abuse might be admissible notwithstanding the rape shield rule. In Hall, the Court of Appeals reported

---

[4] The Commonwealth notes the charges A.W. made against Jeff Kountz involved touching only, not intercourse or sodomy. Furthermore, the incidents differed in that A.W. testified that she never wanted the claims against her cousin to come out, that she did not want to testify against him, and that she loved him.

that it had surveyed case law in other jurisdictions considering the issue of prior allegations, and found the general rule to be that "the admissibility of evidence of similar accusations made by the victim depends on whether they have been proven to be demonstrably false." Id. at 227. The Court of Appeals then enunciated the following test:

> If the unrelated accusations are true, or reasonably true, then evidence of such is clearly inadmissible primarily because of its irrelevance to the instant proceeding. Additionally, unrelated allegations which have neither been proven nor admitted to be false are properly excluded. If demonstrably false, the evidence still must survive a balancing test, i.e., the probative value must outweigh the prejudicial effect.

We also take into consideration KRE 608, which provides that specific instances of conduct, for the purpose of attacking a witness' credibility, may not be proved by extrinsic evidence, but in the court's discretion may be inquired into on cross-examination if probative of the witness' character for truthfulness or untruthfulness. A factual basis for the prior false charge must exist under KRE 608(b) before the party seeking to impeach the witness may ask about it.

The trial court below simply excluded this evidence on the basis of the rape shield rule. The court did not decide whether A.W.'s previous charge against Jeff Kountz had a factual basis or was demonstrably false. The parties predictably conflict over whether the allegations against Jeff Kountz were "demonstrably false."

We agree with the Commonwealth that appellant did not establish that the prior accusations were false. The fact that they were deemed unsubstantiated by the child services agencies does not mean they were demonstrated to be false. In addition, the fact that the prosecution dismissed charges does not equate to those charges being demonstrably false. A.W. never repudiated the claims against her mother's boyfriend

- 14 -

nor conceded any fabrication. They were not independently proved false. We think the failure to substantiate the claim and the failure to prosecute is insufficient to render the previous claim admissible as a demonstrably false claim. Therefore, the trial court properly excluded it.

### III. Hearsay Testimony from the Medical Experts

### A. Dr. Perlman's Report

Next, appellant argues that the trial court erred in allowing the introduction of Dr. Perlman's report at trial, which was read into the record because she was unable to attend the trial due to illness. Appellant argues that the reading of the report violated his right to confront witnesses because the report contained hearsay statements from A.W. regarding prior sexual behavior. He complains he was prejudiced by his inability to confront A.W. about statements which could not be explored on cross-examination because of the rape shield prohibition. Appellant argues that the hearsay statements were not admissible under KRE 703(b) or KRE 803(4).

The Commonwealth argues that appellant should be estopped from complaining about the admission of the report under Parson v. Commonwealth, 144 S.W.3d 775 (Ky. 2004), because when faced with the news on the first day of trial that Dr. Perlman could not appear, the defense agreed to the reading of the report. However, we do not agree that the agreement of the defense reflected the situation in Parson. First, it is not as clear-cut that the defense acquiesced to the report in its entirety, since in the same hearing in which it agreed to have the report read the defense expressed concerns about the hearsay contained therein. Second, in Parson, this court found a clear waiver of the right of confrontation at trial *and* a detrimental reliance in that a deposition was conducted and the deposed witnesses would not be available for trial. Id. at 783-785.

The case at bar does not involve that sort of detrimental reliance. Finally, appellant was trying to preserve his right of confrontation, which was not at issue in Parson because the defendant therein had participated in a deposition. We decline to impose estoppel principles in this situation.

At issue were A.W.'s statements in the report that she had only had a single sexual partner who was nineteen years of age, that her first sexual activity was two to three months prior, and that she had no previous history of sexual abuse allegations. Appellant argues the statements in the medical report were patently false since it was a matter of record that she had made sexual abuse accusations against Jeff Kountz. Additionally, her statements regarding her sexual history were contradicted by her statements to the interviewer at Children First, to whom she stated that she had other sexual partners beginning at a younger age. The jury never heard about the discrepancies in her statements.

We agree with the defense that the testimony did not fit under KRE 703(b), which was relied on by the trial court. This evidence was not otherwise admissible and was not shown to be trustworthy or necessary to illuminate the doctor's testimony. Rabovsky v. Commonwealth, 973 S.W.2d 6, 11 (1998). The evidence regarding her sexual activity was arguably for the purpose of diagnosis or treatment and so was properly admitted under KRE 803(4). However, even though the evidence may be admissible by way of the KRE 803(4) hearsay exception, it is still subject to exclusion under KRE 403 "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Garrett v. Commonwealth, 48 S.W.3d 6, 14 (Ky. 2001). Furthermore evidence relating to a

- 16 -

victim's sexual behavior is also subject to exclusion under KRE 412 even though the Commonwealth rather than the defense seeks to use it.

We have mentioned with approval the use of "sanitized" versions of medical reports to be presented to the jury to avoid prejudice. Garrett, 48 S.W.3d at 14. In the case at bar, we believe that the appellant makes a persuasive argument that the inclusion of these statements were prejudicial to him in that he was not able to refute them, and that they resulted in misleading the jury. On retrial, if it is necessary to read Dr. Perlman's report a second time due to absence, the report should be read without hearsay statements that violate KRE 403 or information pertaining to sexual history that is excludable pursuant to KRE 412.

## B. Dr. Spivack's Testimony

Next, appellant argues that it was error to allow Dr. Spivack to testify to hearsay from K.P. He argues that much of K.P.'s statements to the doctor were not made for the purpose of medical treatment or reasonably pertinent thereto. K.P.'s description of the offense, which mirrored her testimony at trial, was repeated by Dr. Spivack. Dr. Spivack also repeated K.P.'s statement that the acts were perpetrated by A.W.'s cousin. The jury had already learned that appellant was A.W.'s cousin. Appellant argues this repetition of prior consistent statements was highly prejudicial because it bolstered K.P.'s testimony and served to enhance her credibility. Appellant points out that the details of the sexual assault allegations in the case at bar were not "sanitized" as in Garrett to avoid prejudice.

Dr. Spivack also testified to statements from K.P.'s mother that K.P. was pre-diabetic and had had difficulty controlling her diet since the incident and that she was reluctant to talk to her best friend, A.W. following the incident. Appellant argues this

- 17 -

information was not reasonably pertinent to medical treatment.

Appellant contends that the statements could not be disclosed under KRE 803(4) or KRE 703(b). We believe that the statements from K.P.'s mother and K.P.'s description of the assault and identification of the perpetrator did not fit within the standard of KRE 703(b) because they were not determined to be trustworthy and necessary to illuminate the doctor's testimony. Rabovsky, 973 S.W.2d at 11. Under KRE 803(4), the evidence must be admissible as information offered for purposes of medical treatment and reasonably pertinent thereto. We also must determine whether the probative value of the evidence is substantially outweighed by the danger of undue prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Garrett, 48 S.W.3d at 14.

We believe that the statements from K.P.'s mother that the doctor repeated about her diet and frame of mind were reasonably pertinent to diagnosis or treatment under KRE 803(4). We have opined that statements of identification of the perpetrator of abuse are seldom, if ever, pertinent to treatment or diagnosis. Garrett, 48 S.W.3d at 12. Thus, we agree that Dr. Spivack should not have been permitted to identify A.W.'s cousin as the perpetrator of the sexual assault.

In addition, we believe other portions of the history she gave to Dr. Spivack should have been disallowed, such as the manner in which the offense was perpetrated and statements appellant made. See Souder v. Commonwealth, 719 S.W.2d 730, 735 (Ky. 1986)(Usually information for medical treatment and diagnosis "does not include information provided as part of a criminal investigation.") Since this case is being remanded for a new trial, we need not determine if this was harmless given K.P.'s testimony at trial. On remand, any statements made which did not relate to diagnosis

- 18 -

or treatment and which the court determines to be unduly prejudicial under the KRE 403 test should be excluded.

For all the foregoing reasons, the convictions of Vincent Giancola in the Jefferson Circuit Court are vacated and this case remanded for proceedings consistent with this opinion.

All sitting.

Lambert, C.J.; McAnulty, Minton, and Schroder, J.J. concur. Cunningham, J., dissents by separate opinion in which Noble, and Scott, J.J., join.

COUNSEL FOR APPELLANT:

Daniel T. Goyette
Louisville Metro Public Defender
200 Advocacy Plaza
719 West Jefferson Street
Louisville, Ky 40202

Elizabeth B. McMahon
Assistant Public Defender
200 Advocacy Plaza
719 West Jefferson Street
Louisville, Ky 40202

COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General
Room 118, Capitol Building
Frankfort, Ky 40601

James C. Shackelford
Assistant Attorney General
1024 Capital Center Drive
Frankfort, Ky 40601

# Supreme Court of Kentucky

## 2005-SC-000869-MR

VINCENT RAY GIANCOLA                                            APPELLANT

V.              APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BARRY WILLETT, JUDGE
NOS. 02-CR-01992 AND 04-CR-03214

COMMONWEALTH OF KENTUCKY                          APPELLEE

### DISSENTING OPINION BY JUSTICE CUNNINGHAM

Because I do not believe the trial court's ruling with respect to joinder rises to the level of a clear abuse of discretion, I respectfully dissent. As evidenced by the majority opinion's recitation of the facts, the circumstances of this case created a "close call" for the trial judge. While appellant's methods of abusing A.W. and K.P. were distinguishable, both girls were thirteen years old, appellant abused both girls in his basement on the same couch, and all of the crimes occurred after appellant approached the girls as they slept. As part of this "common scheme," the consenting victim and appellant conferred about the prospects of his having sex with the other victim.

A court abuses its discretion when its decision is arbitrary, unreasonable, unfair or unsupported by sound legal principles. Miller v. Eldridge, 146 S.W.3d 909, 914 (Ky. 2004). The only real difference between the two cases is that one was victimized by force, the other by consent. There are sufficient similarities to support the trial court's ultimate ruling. I, therefore, cannot conclude that that the trial court's decision was arbitrary or unreasonable.

Noble and Scott, J.J., join this dissenting opinion.